*903
 
 ATTORNEY DISCIPLINARY PROCEEDINGS
 

 PER CURIAM.
 
 *
 

 This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, S. Judd Tooke, an attorney licensed to practice law in Louisiana but currently on interim suspension.
 
 In re: Tooke,
 
 05-2489 (La.12/16/05), 916 So.2d 1027.
 

 FORMAL CHARGES
 

 Count I
 
 — The
 
 Ily Matter
 

 In October 2003, David Ily hired respondent to initiate injunctive relief proceedings in an effort to prevent Mr. fly’s former landlord from disposing of or selling his work equipment and tools, which were valued at approximately $20,000. Respondent failed to communicate with Mr. Ily and failed to initiate the proceedings for an extended period of time; as a result, the equipment and tools were disposed of. Thereafter, Mr. fly was unable to earn a living, and foreclosure proceedings were initiated against his personal residence.
 

 Respondent’s paralegal advised Mr. Ily that the injunction proceedings had been initiated when, in fact, the initial petition had not been filed. Respondent’s paralegal also agreed to contact Mr. fly’s mortgage company to provide information |2related to the proceedings in an effort to obtain temporary relief from the foreclosure proceedings; however, she failed to do so.
 

 On June 7, 2004, Mr. fly filed a disciplinary complaint against respondent. On June 23, 2004, respondent informed Mr. fly that he was withdrawing from the representation. Subsequently, respondent informed the ODC that he had assigned Mr. fly’s file to a paralegal for monitoring and to prepare the case for filing. However, his paralegal had personal problems that kept her out of the office for an extended period of time, and Mr. fly’s legal matter “fell through the cracks and did not receive the attention it deserved.”
 

 As a result of the foregoing, Mr. fly’s legal matter was neglected for approximately eight months. Furthermore, Mr. fly had to request his file three times before receiving same. Upon receipt of the file, Mr. Ily discovered that his signature had been forged on a verification document, which was then improperly notarized.
 

 
 *904
 

 Count II
 
 — The
 
 Conversion Matter
 

 Between 1999 and 2004, while a partner in the law firm Walker, Tooke & Lyons, L.L.P., respondent submitted numerous reimbursement requests for expenses purportedly incurred on behalf of clients. However, he did not perform legal work or incur fees and/or expenses for many of the matters for which he received reimbursement. Nonetheless, he approved the reimbursement requests and received payment directly from the firm’s operating account. His clients were subsequently billed for legal work that had not been performed and for non-existent expenses and/or fees. Respondent admitted that some of the expenses were legitimate while others were not.
 

 | ^Respondent also deposited his personal funds into a sub-trust account that belonged to the firm. He used the sub-trust account as his personal checking account. It does not appear that the firm’s clients were affiliated with the sub-trust account, nor were they harmed by respondent’s use of same.
 

 On December 2, 2004, respondent self-reported this misconduct to the ODC. At that time, respondent estimated that he had converted approximately $30,000 of client funds. However, a February 16, 2005 accounting audit report indicated that respondent received a total of $60,225.22 in “unsupported” funds, meaning the funds were not corroborated by documentary evidence. In August and September 2005, respondent reimbursed a total of $12,243.63 to 88 clients and the firm.
 

 Count III
 
 — The
 
 Riggs Matter
 

 In June 2002, Gracie Riggs hired respondent to review, evaluate, and revise a living trust and a 1995 power of attorney document. She also hired respondent to prepare her will.
 

 Respondent advised Ms. Riggs that the flat fee for preparing the will would be $300. However, he failed to communicate the fee for the additional matters, despite Ms. Riggs’ requests for this information. Thereafter, Ms. Riggs received invoices indicating that respondent’s fee was $150 per hour. She remitted payment in accordance with the invoices.
 

 In total, Ms. Riggs paid respondent $2,156. Nonetheless, and despite Ms. Riggs’ numerous requests, respondent failed to apprise her of the status of her legal matters. He also failed to produce any documents or communicate with her.
 

 On November 20, 2004, Ms. Riggs mailed respondent a letter terminating his services. On February 3, 2005, respondent acknowledged that he failed to complete |4Ms. Riggs’ legal matter and failed to communicate with her. As such, respondent indicated that he would refund $2,156 to Ms. Riggs. Respondent refunded only $27 to Ms. Riggs.
 

 Count IV— The Hamilton Matter
 

 Respondent drafted a will for Wanda Hamilton. The will listed him as a legatee. A paralegal at respondent’s law firm was named as executrix.
 

 Ms. Hamilton died in 2002. The executrix received a total of $253.89 for Ms. Hamilton’s royalty interest in a property in Oklahoma. In accordance with the will, two certificates of deposit totaling $70,044.63 were transferred to an account to which respondent had access. Respondent withdrew $32,641.65 from said account. A portion of Ms. Hamilton’s estate has been disposed of, but no final judgment of possession has been rendered.
 

 Count V
 
 — The
 
 Rhodes Matter
 

 In February 2000, respondent prepared an original sale and mortgage that transferred ownership of a piece of property from Sue Reynolds to Freddie Jackson.
 
 *905
 
 Ms. Reynolds financed Mr. Jackson’s purchase of the property, and Mr. Jackson executed a promissory note wherein he agreed to make 180 consecutive monthly payments to Ms. Reynolds. Respondent collected the monthly payments for a fee of 25% of the amount collected.
 

 Upon Ms. Reynolds’ death, Syble Rhodes inherited Mr. Jackson’s mortgage note. Mr. Jackson failed to remit numerous consecutive monthly payments. Consequently, in April 2004, Ms. Rhodes hired respondent to institute foreclosure proceedings against Mr. Jackson.
 

 | Jnstead of instituting foreclosure proceedings, respondent granted Mr. Jackson an additional thirty days to remit the delinquent payments without Ms. Rhodes’ consent. Respondent delayed the proceedings for approximately two more months, which resulted in Mr. Jackson being delinquent for approximately seven months.
 

 In June 2004, respondent filed a
 
 dation en paiement
 
 wherein ownership of the property was transferred back to Ms. Rhodes. Also in June 2004, a federal tax lien was placed on the property as a result of Mr. Jackson’s failure to pay taxes. Respondent informed Ms. Rhodes that neither she nor the property would be affected by the tax lien.
 

 Relying on respondent’s assertion, Ms. Rhodes entered into a contract to sell the property. However, she later learned that she was unable to sell the property because of the tax lien. Respondent contended that he took remedial measures and instituted proceedings to remove the tax lien, but no documentary evidence exists to support respondent’s contention. Ms. Rhodes was unable to re-establish contact with respondent to determine whether the matter was concluded.
 

 DISCIPLINARY PROCEEDINGS
 

 In April 2008, the ODC filed five counts of formal charges against respondent, alleging that his conduct as set forth above violated the following provisions of the Rules of Professional Conduct: Rules 1.1(a) (failure to provide competent representation to a client), 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5(a) (charging an unreasonable fee), 1.5(b) (the scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client), 1.7(a) (a lawyer shall not represent a client if the | (¡representation involves a concurrent conflict of interest), 1.8(c) (a lawyer shall not solicit any substantial gift from a client, including a testamentary gift, or prepare on behalf of a client an instrument giving the lawyer or a person related to the lawyer any substantial gift), 1.15(a) (safekeeping property of clients or third persons), 1.16(c) (a lawyer must comply with applicable law requiring notice or permission of a tribunal when terminating a representation), 1.16(d) (obligations upon termination of the representation), 3.2 (failure to make reasonable efforts to expedite litigation), 5.3 (failure to properly supervise a non-lawyer assistant), 8.1(b) (knowing failure to respond to a lawful demand for information from a disciplinary authority), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).
 

 Respondent failed to answer the formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule
 
 *906
 
 XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee’s consideration.
 

 Hearing Committee Report
 

 After considering the ODC’s deemed admitted submission, the hearing committee determined that the formal charges have been deemed admitted and proven by clear and convincing evidence. Based on the deemed admitted facts and additional evidence presented by the ODC, the committee determined that respondent violated |7the following provisions of the Rules of Professional Conduct: Rules 1.1(a), 1.3, 1.4, 1.5(a), 1.7(a), 1.8(c), 1.15(a), 1.16(c), 1.16(d), 3.2, 8.4(a), 8.4(b), and 8.4(c). The committee did not discuss the remainder of the rule violations alleged in the formal charges.
 

 The committee further found that respondent intentionally and negligently violated duties owed to his clients, the legal system, and the legal profession. His misconduct caused serious harm to his clients and his law partners. Relying on the ABA’s
 
 Standards for Imposing Lawyer Sanctions,
 
 the committee determined that disbarment is the baseline sanction.
 

 The committee found the following aggravating factors present: prior disciplinary offenses,
 
 [1]
 
 a dishonest or selfish motive, a pattern of misconduct, and multiple offenses. No mitigating factors were cited by the committee.
 

 Under these circumstances, the committee recommended that respondent be disbarred.
 

 Neither respondent nor the ODC filed an objection to the hearing committee’s report.
 

 Disciplinary Board Recommendation
 

 After review, the disciplinary board determined that the hearing committee’s factual findings are supported by the factual allegations of the formal charges and/or by the evidence submitted in support of the allegations. The board also determined that respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.1(a), 1.3, 1.4, 1.5(a), 1.5(b), 1.7(a), 1.8(c), 1.15(a), 1.16(d), 3.2, 5.3, |s8.4(a), 8.4(b), and 8.4(c). The board found no evidence in the record to support the charged violations of Rules 1.16(c) or 8.1(b).
 

 The board determined that respondent intentionally and negligently violated duties owed to his clients, the legal system, and the legal profession. His conduct caused serious harm to his clients and law partners. Based on the ABA’s
 
 Standards for Imposing Lawyer Sanctions,
 
 the board determined that disbarment is the baseline sanction.
 

 The board agreed with the aggravating factors found by the committee and additionally found the aggravating factor of substantial experience in the practice of law (admitted 1973). The board indicated that no mitigating factors are present.
 

 Considering respondent’s misconduct in light of the permanent disbarment guidelines and the prior jurisprudence of this
 
 *907
 
 court, the board recommended that respondent be permanently disbarred. The board also recommended that respondent be ordered to pay restitution to his victims.
 

 Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
 

 DISCUSSION
 

 Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence.
 
 In re: Quaid,
 
 94-1316 (La.11/30/94), 646 So.2d 343;
 
 Louisiana State Bar Ass’n v. Boutall,
 
 597 So.2d 444 (La.1992).
 

 In cases in which the lawyer does not answer the formal charges, the factual allegations of those charges are deemed admitted. Supreme Court Rule XIX, § |911(E)(3). Thus, the ODC bears no additional burden to prove the factual allegations contained in the formal charges after those charges have been deemed admitted. However, the language of § 11(E)(3) does not encompass legal conclusions that flow from the factual allegations. If the legal conclusion the ODC seeks to prove (i.e., a violation of a specific rule) is not readily apparent from the deemed admitted facts, additional evidence may need to be submitted in order to prove the legal conclusions that flow from the admitted factual allegations.
 
 In re: Donnan,
 
 01-3058 (La.1/10/03), 838 So.2d 715.
 

 The deemed admitted facts reveal that respondent neglected legal matters, failed to communicate with clients, failed to properly supervise his non-lawyer assistant, engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, converted client funds to his own use by billing and receiving payment for non-existent expenses and legal fees, failed to communicate a fee arrangement to a client, failed to refund unearned fees, failed to fulfill his obligations upon termination of representations, and engaged in conflicts of interest. Based on these facts, respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(a), 1.5(b), 1.7(a), 1.8(c), 1.15(a), 1.16(d), 3.2, 5.3, 8.4(a), and 8.4(c).
 

 Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct.
 
 Louisiana State Bar Ass’n v. Reis,
 
 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and 11(lmitigating circumstances.
 
 Louisiana State Bar Ass’n v. Whittington,
 
 459 So.2d 520 (La.1984).
 

 Respondent’s conduct appears to be more intentional than negligent. He violated duties owed to his clients, the legal system, and the legal profession, causing substantial actual harm. We agree with the hearing committee and the disciplinary board that the baseline sanction is disbarment. The aggravating factors found by the board are supported by the record. There are no mitigating factors. Therefore, the only issue presented for our consideration is whether respondent’s misconduct is so egregious as to warrant permanent disbarment.
 

 Supreme Court Rule XIX, Appendix E depicts conduct that may warrant permanent disbarment. We agree with the disci
 
 *908
 
 plinary board that Guideline 1 (“[r]epeated or multiple instances of intentional conversion of client funds with substantial harm”) is applicable in this matter. Respondent admitted to converting approximately $30,000 of client funds over several years. However, an audit revealed that the actual amount was more than $60,000. Of this amount, respondent has only reimbursed a total of $12,243.63. These reimbursements occurred in August and September 2005. The record contains no evidence that respondent has made further efforts at restitution. Respondent has also failed to refund approximately $2,100 in unearned fees to Ms. Riggs.
 

 In light of respondent’s intentional, repeated misconduct, which caused harm to numerous clients, respondent must be permanently disbarred.
 

 DECREE
 

 Upon review of the findings and recommendations of the hearing committee and the disciplinary board, and considering the record, it is ordered that the name of |nS. Judd Tooke, Louisiana Bar Roll number 12862, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this State. It is further ordered that respondent pay full restitution to his victims. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
 

 *
 

 Judge Benjamin Jones, of the Fourth Judicial District Court, assigned as Justice
 
 Pro Tem-pore,
 
 participating in the decision.
 

 [1]
 

 . In 1995, respondent received an admonition for violating Rule 1.5(b) of the Rules of Professional Conduct. In 2004, respondent was suspended from the practice of law for four months, fully deferred, for neglecting a legal matter, resulting in the dismissal of a client's lawsuit on abandonment grounds, failure to communicate with a client, and engaging in conduct prejudicial to the administration of justice.
 
 In re: Tooke,
 
 04-0533 (La.9/3/04), 881 So.2d 741.