*910 ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
_[/This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Brandi Traylor Boutwell, an attorney licensed to practice law in Louisiana but currently on interim suspension for threat of harm to the public. In re: Boutwell, 12-0379 (La.2/16/12), 82 So.3d 263.
FORMAL CHARGES
Count I — The Valentine Matter
In June 2011, Ginger Valentine hired respondent to defend her against a lawsuit. Ms. Valentine indicated that she paid respondent a $3,500 advance.
Despite being granted at least one extension of time in which to file an answer on Ms. Valentine’s behalf, respondent allowed a default judgment to be obtained against her client, which proved problematic in Ms. Valentine’s attempts to refinance her home. When Ms. Valentine was served with notice of the default judgment in early August 2011, she fired respondent and hired another attorney to represent her. Thereafter, respondent failed to respond to requests for an accounting of the fees paid by Ms. Valentine and a refund of any unearned fees.
In October 2011, Ms. Valentine filed a disciplinary complaint against respondent. Respondent failed to respond to notice of the complaint, necessitating the issuance of a subpoena to obtain her sworn statement. *911 Despite being 12personally served with the subpoena, respondent failed to appear or provide any of the requested documents.
Ms. Valentine’s new attorney indicated that, on November 10, 2011, respondent told him she would provide Ms. Valentine with a refund that week. He further indicated that, had respondent kept the funds in her trust account, as she should have, she should have been able to issue a refund check. However, as of the date of the filing of the formal charges against respondent, she still had not provided the refund.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.15 (safekeeping property of clients or third parties), 8.1(c) (failure to cooperate with the ODC in its investigation), and 8.4.[1]
Count II — The Merritt Matter
In July 2011, Tina and Farris Merritt hired respondent to represent them in a child custody matter. The Merritts paid respondent $5,200 to file a request for an emergency hearing. However, according to the Merritts, nothing was ever filed, and respondent’s telephone was disconnected. Via a November 1, 2011 letter, the Mer-ritts fired respondent and requested a refund.
In December 2011, the Merritts filed a disciplinary complaint against respondent. Respondent failed to respond to notices of the complaint. As of February 2012, the Merritts had received no refund and no communication from respondent.
|aThe ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4 (failure to communicate with a client), 1.15, 8.1(c), and 8.4.
Count III — The Trust Account Overdraft Matter
The ODC received notices of overdrafts in respondent’s client trust account on September 14, 2011, September 29, 2011, and October 6, 2011. The ODC’s screening counsel requested that respondent address the issue, but she failed to respond. Accordingly, in December 2011, the ODC opened a formal investigation. The ODC sent respondent notice of the formal investigation on December 13, 2011. However, the ODC never received confirmation that respondent received the notice.
Nevertheless, the evidence received by the ODC indicated that respondent’s trust account was, in fact, overdrawn on the above dates. The overdraft notices specified that the checks were returned, indicating that client funds were probably compromised.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.15 and 8.1(c).
Count IV — The Beard Matter
In April 2011, Jason Beard hired respondent to represent him in a child custody matter. Mr. Beard indicated that he paid $1,900 toward a $3,000 fee. Respondent notified opposing counsel of her representation of Mr. Beard but, thereafter, informed Mr. Beard his case would be stronger in six months to a year.
At that point, respondent indicated the fee would now be $3,500. A disagreement over the final fee arose, and Mr. Beard requested a refund of the $1,900 paid. Re *912 spondent refused, claiming the funds had already been used. ^Nevertheless, she failed to provide Mr. Beard with an accounting or itemized statement.
In August 2011, Mr. Beard filed a disciplinary complaint against respondent. Respondent failed to respond to notices of the complaint.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.15, 8.1(c), and 8.4.
Count v. — The Slater Matter
In November 2010, George Slater hired respondent to handle his divorce, paying her a total of $2,250. In September 2011, Mr. Slater filed a disciplinary complaint against respondent, requesting that she refund the $2,250 because she failed to perform the services for which she was paid. Respondent failed to respond to notice of the complaint. The ODC’s investigation revealed that, as of February 2012, no pleadings had been filed on Mr. Slater’s behalf.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.8, 1.4,1.15,8.1(c), and 8.4.
Count VI — The McDonald/Stewart Matter
In June 2011, Robby McDonald hired respondent to handle a collection matter. Mr. McDonald paid respondent a total of $3,300, but she never filed a lawsuit on his behalf. Furthermore, Mr. McDonald’s attempts to contact respondent were unsuccessful as it appears that her office is now closed and her telephone disconnected.
Eventually, Mr. McDonald hired attorney Arthur Stewart to assist him in the matter. Mr. Stewart attempted to obtain Mr. McDonald’s file from respondent, but he indicated his attempts were unsuccessful despite respondent’s assurances that she would provide the file. Additionally, requests for a refund of the fee paid to | .^respondent have been fruitless. Mr. Stewart’s secretary, who formerly worked as respondent’s secretary, indicated that she has personal knowledge of respondent’s failure to communicate with clients, neglect of legal matters, and operating her law practice without a trust account.
In January 2012, the ODC received disciplinary complaints against respondent from both Mr. McDonald and Mr. Stewart. Notices of the complaints were sent to respondent at numerous addresses. However, the ODC had not received delivery confirmation notices by the date of the filing of the formal charges.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4,1.15,and 8.4.
Count VII — The Jarvis Matter
In June 2011, Angela Jarvis hired respondent to handle her divorce and custody matter. She paid respondent a total of $5,950. Respondent met with Ms. Jarvis three times and appeared at a hearing officer conference. However, respondent never filed any pleadings on Ms. Jarvis’ behalf or took any depositions. She also failed to provide an accounting of the fees paid, despite Ms. Jarvis’ requests. When Ms. Jarvis could not contact respondent, she hired another attorney, who confirmed that no pleadings had been filed on her behalf.
In March 2012, Ms. Jarvis filed a disciplinary complaint against respondent. Respondent failed to respond to notices of the complaint.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4,1.15,8.1(c), and 8.4.
*913 | ¡¿Count VIII — The' Spencer Matter
In August 2011, Sean Spencer hired respondent to handle his child custody matter. Mr. Spencer’s mother wired $8,900 to respondent on August 4, 2011. Thereafter, respondent failed to appear at three scheduled court hearings. Mr. Spencer indicated that, during the last hearing in January 2012, the judge called respondent, and respondent apparently informed the judge she was closing her law practice and would not be representing Mr. Spencer any longer.
Mr. Spencer further indicated that, despite respondent’s promises to refund the fee in full, he has not received a refund and respondent will not accept his telephone calls. Mr. Spencer also claimed that respondent did none of the work for which she was retained.
In March 2012, Mr. Spencer filed a disciplinary complaint against respondent. Respondent failed to respond to notice of the complaint.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4,1.15, 8.1(c), and 8.4.
Count IX — The Williams Matter
In August 2011, Ginney Williams hired respondent to represent her in a domestic matter. Ms. Williams paid respondent a total of $8,500. Respondent failed to forward the required documents to opposing counsel. Whenever Ms. Williams asked respondent about the documents, respondent assured her that she was working on the matter. At one point, Ms. Williams was unable to contact respondent for more than a month.
In January 2012, respondent finally replied to Ms. Williams, claiming that her former employee had stolen the money Ms. Williams had paid her, which was the reason for the delay. However, on January 13, 2012, respondent met Ms. Williams at the courthouse and informed her that she had actually loaned the [ 7money to a relative, who did not pay her back. Respondent stated that she was embarrassed by this, which was the reason for avoiding Ms. Williams’ calls and texts.
Via a certified letter dated February 8, 2012, Ms. Williams terminated respondent’s services and requested an accounting and refund of any unearned fees. According to Ms. Williams, respondent never replied to this request.
In March 2012, Ms. Williams filed a disciplinary complaint against respondent. Respondent failed to respond to notice of complaint.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4,1.15, 8.1(c), and 8.4.
Count X — The Curtin Matter
In May 2011, Richard Curtin hired respondent to represent his granddaughter in a child custody matter. Mr. Curtin paid respondent $3,200 to handle the matter, but the party seeking custody did not take any action to move the matter forward. Nevertheless, respondent did not refund the fee Mr. Curtin paid, despite receiving several requests for a refund. She also missed an appointment in October 2011.
In April 2012, Mr. Curtin filed a disciplinary complaint against respondent. Respondent failed to respond to notice of the complaint.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.15, 8.1(c), and 8.4.
Count XI — The Heame Matter
On February 13, 2012, Aaron and Jessica Hearne hired respondent to represent them in two separate child custody mat *914 ters. They paid respondent $5,000 and readied the requested paperwork by February 23, 2012. By that time, ^respondent had been placed on interim suspension from the practice of law, but she never advised the Hearnes of her status.
The Hearnes indicated that they attempted to meet with respondent but were given various excuses as to why they could not. However, on March 7, 2012, respondent contacted Ms. Hearne and advised that she had moved to Texas and would now be able to work on their custody matters. Respondent promised to have the petitions ready for review within two weeks. However, two weeks later, respondent indicated that an emergency had arisen in another case but that she would work on the Hearnes’ matters by March 29, 2012.
Ms. Hearne never received any further correspondence from respondent. In fact, respondent’s telephone number was no longer in service. Thereafter, Ms. Hearne learned of respondent’s interim suspension, but she stressed that respondent never told them about same.
In April 2012, the Hearnes filed a disciplinary complaint against respondent. Respondent failed to respond to notice of the complaint.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.15, 5.5 (engaging in the unauthorized practice of law), 8.1(c), and 8.4. The ODC further alleged that respondent violated Supreme Court Rule XIX, § 26, which requires an attorney placed on interim suspension to provide notice to all clients.
DISCIPLINARY PROCEEDINGS
In June 2010, the ODC filed formal charges against respondent. Respondent failed to answer the formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written 19 arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee’s consideration.

Hearing Committee Report

Noting that the factual allegations of the formal charges were deemed admitted, and considering the ODC’s deemed admitted submission, the hearing committee determined the facts support a finding that respondent violated the Rules of Professional Conduct as charged. The committee further stated:
The nature of the multiple charges and findings of fact, together with the pattern of respondent in abusing trust/financial accounts with which she was entrusted, indicates that Respondent has serious and continuing flaws in judgment and character. In the opinion of the Committee, if the Respondent is allowed to continue the practice of law, and to exercise the responsibilities of an attorney, absent further change in attitude, professional practices, and ethics, she will continue to present a danger to her clients, to the public, [to] the legal system, and to the legal profession.
In light of the above findings, the committee recommended that respondent be disbarred.
The ODC filed an objection to the hearing committee’s report and recommendation, arguing that permanent disbarment is a more appropriate sanction in this case.

Disciplinary Board Recommendation

After review, the disciplinary board determined that the hearing committee’s factual findings are not manifestly erroneous. *915 Additionally, the board determined that the committee correctly applied the Rules of Professional Conduct. As such, the board adopted the committee’s factual findings and legal conclusions. In considering each alleged rule violation, the board found the following:
11 (¡Rule 1.3 — In the Valentine matter, respondent allowed a default judgment to be entered against her client. In the Merritt matter, respondent failed to file a request for an emergency hearing concerning the custody of a minor. In the Slater matter, respondent failed to perform any work on the divorce and never filed any pleadings. In the McDonald/Stewart matter, respondent failed to perform any work after several months of representation. In the Jarvis matter, respondent failed to take any depositions or file any motions or pleadings, which necessitated the hiring of a new attorney who discovered her failures. In the Spencer matter, respondent did not perform any work and failed to appear at three scheduled court hearings; when the judge contacted her, respondent indicated she would no longer be representing Mr. Spencer or practicing law. In the Williams matter, respondent failed to forward documents to opposing counsel so they could be finalized and filed with the court. In the Curtin matter, respondent missed an appointment concerning her client’s custody case. And in the Hearne matter, respondent accepted her clients’ funds without any intention of performing the work she was hired to do.
Rule 14 — In the Merritt matter, respondent’s telephone was disconnected mid-representation. In the McDonald/Stewart matter, respondent failed to provide her former client’s file to his new attorney despite multiple requests and her assurances that she would do so. Additionally, her client was unable to contact her as her office appeared to be closed and her telephone disconnected. In the Spencer matter, respondent refused to answer Mr. Spencer’s telephone calls. In the Williams matter, respondent indicated that she was working on the matter but then refused to communicate for more than a month. And in the Hearne matter, respondent provided various excuses as to why she could not meet with her clients as requested. Additionally, she inadequately communicated with the Hearnes until she ceased communication altogether.
\uRule 1.15 — In the Valentine matter, respondent failed to provide an accounting and refund unearned fees. In the Merritt matter, respondent failed to refund the unearned fee, despite the client’s request. Additionally, the ODC received three client trust account overdraft notifications from respondent’s bank. In the Beard matter, a fee dispute developed; the client requested a refund, but respondent claimed the funds had been used. Nevertheless, respondent failed to provide an accounting. In the Slater and Curtin matters, respondent failed to refund the unearned fee. In the McDonald/Stewart matter, respondent failed to refund the unearned fee, and the funds were not placed into a client trust account. Finally, in the Jarvis, Spencer, and Williams matters, respondent converted client funds to her own use and failed to provide an accounting.
Rule 5.5 — In the Hearne matter, respondent failed to inform her clients of her interim suspension, and she held herself out as an attorney authorized to practice law after being placed on interim suspension.
Rule 8.1(c) — Despite being notified of the disciplinary complaints via certified mail in all matters except the McDonald/Stewart matter, respondent failed to respond to the notices.
*916 Rule 84 — Respondent violated Rule 8.4(a) (violation of the Rules of Professional Conduct) by engaging in the misconduct addressed above. Rule 8.4(c) states that it is professional misconduct to “engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.” Respondent’s conversion of client funds in the Valentine, Beard, Slater, Jarvis, and Spencer matters constitutes a violation of Rule 8.4(c). In the McDonald/Stewart matter, it appears that respondent accepted fees without placing them into her client trust account, rendering them susceptible to commingling and conversion. In the Williams matter, respondent claimed her employee had stolen the money provided for representation, which caused a delay in the proceeding. However, respondent later 1^admitted that she loaned the money to a relative who did not repay the loan. Finally, in the Curtin matter, respondent refused to return the unearned fee.
Based on these findings, the board determined that respondent knowingly and intentionally violated duties owed to her clients, the public, and the legal profession. Her conduct caused serious injury to multiple clients. After considering the ABA’s Standards for Imposing Lawyer Sanctions, the board determined that disbarment is the baseline sanction. In further support of disbarment as the baseline sanction, the board stated:
In accepting fees from her clients and failing to provide services, Respondent has intentionally converted funds from numerous sources causing injury to multiple clients. By abandoning her law practice, she has caused serious injury to her clients. She has knowingly failed to perform services for her clients and has engaged in a clear pattern of neglect with respect to client matters. [Furthermore,] Respondent continued to operate as an attorney although she was placed on interim suspension from the practice of law on February 16, 2012.
The sole mitigating factor found by the board was the absence of a prior disciplinary record. In aggravation, the board found the following: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, and indifference to making restitution.
Considering respondent’s misconduct in light of the permanent disbarment guidelines and the prior jurisprudence of this court, the board recommended that she be permanently disbarred. The board also recommended that respondent be ordered to make restitution to her victims.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
| ^DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57.
In cases in which the lawyer does not answer the formal charges, the factual allegations of those charges are deemed admitted. Supreme Court Rule XIX, § 11(E)(3). Thus, the ODC bears no additional burden to prove the factual allegations contained in the formal charges after those charges have been deemed admitted. However, the language of § 11(E)(3) does not encompass legal conclusions that flow *917 from the factual allegations. If the legal conclusion the ODC seeks to prove (i.e., a violation of a specific rule) is not readily apparent from the deemed admitted facts, additional evidence may need to be submitted in order to prove the legal conclusions that flow from the admitted factual allegations. In re: Donnan, 01-3058 (La.1/10/03), 838 So.2d 715.
The record in this deemed admitted matter supports a finding that respondent neglected legal matters and failed to communicate with clients, essentially abandoning her law practice. She also failed to provide accountings of fees paid, failed to refund unearned fees, practiced law and held herself out as an attorney after being placed on interim suspension, and failed to cooperate with the ODC in its investigations. Based on these facts, respondent has violated Rules 1.3, 1.4, 1.15, 5.5, 8.1(c), 8.4(a), and 8.4(c) of the Rules of Professional Conduct. .
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the | ,4profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
The record further supports a finding that respondent knowingly and intentionally violated duties owed to her clients, the public, the legal system, and the legal profession. Her misconduct caused significant actual harm to several vulnerable victims. The baseline sanction for this type of misconduct is disbarment.
In its report, the disciplinary board concluded that respondent’s offenses are so egregious that she should be permanently prohibited from applying for readmission to the bar. We agree. Respondent failed to refund approximately $43,000 in unearned fees paid by her clients, effectively converting those funds to her own use. As such, respondent’s conduct amounts to repeated or multiple instances of intentional conversion of client funds with substantial harm, as required by Guideline 1 of the permanent disbarment guidelines set forth in Supreme Court Rule XIX, Appendix E. Additionally, respondent practiced law and held herself out as an attorney after being placed on interim suspension, conduct that falls under Guideline 8 of the permanent disbarment guidelines (following notice, engaging in the unauthorized practice of law subsequent to resigning from the Bar Association, or during the period of time in which the lawyer is suspended from the practice of law or disbarred).
Respondent’s conduct demonstrates a disregard for her clients and for her duties as an attorney. In order to protect the public and maintain the high standards of the legal profession in this state, we find respondent should not be allowed the opportunity to return to the practice of law in the future.
| ^Accordingly, we will adopt the board’s recommendation and permanently disbar respondent. We will also order respondent to make restitution to her victims.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the *918 record, it is ordered that the name of Brandi Traylor Boutwell, Louisianá Bar Roll number 30767, be stricken from the roll of attorneys and that her license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. It is further ordered that respondent shall make restitution to her victims. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. The formal charges did not specify which subsection of Rule 8.4 was applicable to respondent's alleged misconduct.