| .PER CURIAM.
This disciplinary matter arises from two counts of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Susan L. Donnan, an attorney licensed to practice law in the State of Louisiana, but currently ineligible to practice.[1]
UNDERLYING FACTS
In October 1998, Emathious Robinson retained respondent to handle a personal injury claim arising out of her involvement in an automobile accident. Ms. Robinson thereafter had difficulty contacting respondent concerning the status of the matter. When Ms. Robinson was finally able to reach respondent in mid-March 1999, she learned that respondent had settled the personal injury claim for $6,840.[2] Ms. Robinson stated in her complaint that after she inquired about the settlement check, respondent told her it would take “a long time” for the check to arrive “because it was coming from another state.”
By late April 1999, Ms. Robinson became concerned that she had heard nothing further from respondent about the settlement. Ms. Robinson contacted the insurer involved in the matter and was informed that the settlement check had already been | ¡.issued, and in fact, had been negotiated in late March 1999. In May 1999, Ms. Robinson filed a complaint against respondent with the ODC.
On June 2, 1999, the ODC forwarded a copy of the complaint to respondent at her office address. A receptionist signed for the certified mail the following day. In late June 1999, after receiving no reply to the complaint, the ODC learned that respondent was practicing law out of her home and no longer came into the office. Thereafter, the ODC issued a subpoena to respondent at her home address. "When the ODC’s investigator attempted service of the subpoena, he was informed by respondent’s daughter that respondent was hospitalized for treatment of depression.
Thereafter, in the course of its investigation, the ODC received a copy of the insurance company’s check settling Ms. Robinson’s personal injury claim. The endorsements of both respondent and Ms. Robinson appeared on the back of the check; however, Ms. Robinson denied that *717 she endorsed the check. The check cleared the bank on which it was drawn on March 29, 1999. At the same time, the expenses incurred by Ms. Robinson for medical treatment following her accident were paid in full. On June 9, 1999, Ms. Robinson executed a release in favor of the insurer.
DISCIPLINARY PROCEEDINGS
After investigation, the ODC filed two counts of formal charges against respondent, alleging that her conduct in the Robinson matter violated the following provisions of the Rules of Professional Conduct: Rules 1.2 (scope of the representation), 1.4 (failure to communicate with a client), 1.7 (conflict of interest), 1.15 (safekeeping property of a client or third person), 1.16 (termination of the representation), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act, especially one that reflects adversely on the lawyer’s honesty, trustworthiness, or |afitness as a lawyer), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(g) (failure to cooperate with the ODC in its investigation).
The formal charges were served upon respondent by certified mail.[3] Respondent failed to answer or otherwise reply to the formal charges. Accordingly, the factual allegations contained within the formal charges were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3).[4] The ODC submitted documentary evidence to the hearing committee consisting of: (1) the complaint filed by Ms. Robinson; (2) a copy of the settlement check and the release; (3) a letter from Ms. Robinson’s treating physician acknowledging payment of the medical expenses; (4) a copy of the ODC’s letter transmitting the complaint to respondent and information relating to respondent’s absence from her office; and (5) copies of the investigatory subpoena and information relating to the ODC’s unsuccessful attempts at service of the subpoena. Respondent made no submission for the hearing committee’s consideration.
| ¿Hearing Committee Recommendation
The hearing committee found the ODC proved by clear and convincing evidence that respondent violated the professional rules as charged, and that respondent’s conduct violated duties owed to the legal system and the legal profession. The committee found no mitigating factors are *718 present, with the possible exception of personal or emotional problems, but noted respondent’s prior disciplinary record as an aggravating factor.[5] In light of these considerations, the committee recommended that respondent be suspended from the practice of law for three years.
Neither respondent nor the ODC objected to the hearing committee’s recommendation.

Disciplinary Board Recommendation

In its recommendation, the disciplinary board found that although the factual allegations of the formal charges had been deemed admitted, the “ODC bears the burden to prove a prima facie case by competent evidence and the Board is not relieved of its obligation to ensure that ODC’s burden of proof was satisfied.”[6] After reviewing the record of this matter, the disciplinary board found that the ODC did not fully satisfy its burden of proving the formal charges against respondent. Applying this analysis, the board determined that the ODC satisfied its burden of showing respondent settled her client’s personal injury claim without consent (a violation of Rule 1.2 of the Rules of Professional Conduct); failed to keep her client reasonably informed about the status of her legal matter (a violation of Rule 1.4); failed to | [¡promptly notify her client of the receipt of settlement funds to which she was entitled and failed to promptly deliver these funds to her client (a violation of Rule 1.15); violated the Rules of Professional Conduct (a violation of Rule 8.4(a)); and failed to cooperate in the disciplinary investigation of the complaint filed by Ms. Robinson (a violation of Rules 8.1(c) and 8.4(g)). However, the board determined there is no evidence in the record to support a finding that respondent’s representation of Ms. Robinson was materially limited by respondent’s own interests (a violation of Rule 1.7); that respondent failed to properly terminate her representation of Ms. Robinson (a violation of Rule 1.16); that respondent committed a criminal act (a violation of Rule 8.4(b)); or that she engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation (a violation of Rule 8.4(c)). With respect to Rules 8.4(b) and (c), the board noted Ms. Robinson’s claim that she did not endorse the settlement check; however, the board found there is nothing in the record to indicate who endorsed Ms. Robinson’s name to the check or under what conditions this endorsement was made.
The board found respondent knowingly and intentionally violated duties owed to her client, the legal system, and the profession. The board concluded, however, that there is no clear evidence in the record concerning the amount of actual or potential injury respondent’s misconduct caused. Documents in the record indicate that Ms. Robinson signed a full release of her claims against the insurer on June 9, 1999, a little more than two months after the settlement check was negotiated. Ms. Robinson does not deny that she signed this release. Likewise, there is nothing in the record to indicate the disposition of the funds represented by the check, or wheth *719 er or not Ms. Robinson received any of the proceeds. While Ms. Robinson was denied monies rightfully belonging to her for a period of more than two months, there is no evidence that respondent converted these funds to her own use during that time.
IfiThe board found the record does not contain enough information to determine that any mitigating factors are present in this matter. With respect to aggravating factors, the board added respondent’s bad faith obstruction of the disciplinary proceedings to the hearing committee’s finding of a prior disciplinary record.
In light of these considerations, the ABA’s Standards for Imposing Lawyer Sanctions,[7] and the prior jurisprudence,[8] the board found that the three-year suspension recommended by the committee is too harsh. Nevertheless, the board suggested that the suspension should be of a sufficient length to require respondent to apply for reinstatement. Based on this reasoning, the board recommended that respondent be suspended from the practice of law for two years. The board also recommended that respondent be ordered to provide Ms. Robinson with an accounting of the settlement received in her legal matter and that she be paid any restitution due her. Finally, the board recommended that respondent be assessed with all costs and expenses of these proceedings, with legal interest to commence running thirty days from the date of finality of the court’s judgment until paid.
Neither respondent nor the ODC objected to the recommendation of the disciplinary board.
I DISCUSSION

Analysis of Supreme Court Rule XIX, § 11(E)(3)

Prior to addressing the merits of this case, we must discuss the proper interpretation of Supreme Court Rule XIX, § 11(E)(3), known colloquially as the “deemed admitted rule.” That rule provides that in a case where the respondent fails to file a timely answer to the formal charges, “the factual allegations contained within the formal charges shall be deemed admitted and proven by clear and convincing evidence.” The instant case falls squarely within that rule, as it is undisputed that respondent did not answer the formal charges. Nonetheless, the disci *720 plinary board imposed an additional requirement on the ODC, mandating that it prove “a prima facie case by competent evidence.”
We hold that the “deemed admitted” rule must be applied as it is 'written. That rule states in unambiguous terms that if the respondent attorney does not timely answer formal charges of misconduct, the “factual allegations contained within the formal charges” shall be deemed admitted and proven by clear and convincing evidence. Thus, the ODC bears no additional burden to prove the factual allegations contained in the formal charges after those charges have been deemed admitted. However, the language of § 11(E)(3) does not encompass legal conclusions that flow from the factual allegations. If the legal conclusion the ODC seeks to prove (i.e., a violation of a specific rule) is not readily apparent from the deemed admitted facts, additional evidence may need to be submitted in order to prove the legal conclusions that flow from the admitted factual allegations. In other words, mere allegations of a rule violation, without specific factual allegations or supporting evidence, is insufficient to prove misconduct by the requisite “clear and convincing” standard.
| Determination of Rule Violations
Applying these precepts to the instant case, we now turn to an examination of the formal charges and other evidence submitted by the ODC to determine whether there is a sufficient basis under the deemed admitted facts and other evidence to support a finding that respondent has violated the professional rules as charged.
The two counts of formal charges filed by the ODC against respondent are as follows:

Count I

On or about October 4, 1998, Emathious Kashara Robinson retained your services in her personal injury case. Thereafter, you failed to return Ms. Robinson’s telephone calls and you failed to keep her advised as to the status of her case. On or about March 22, 1999, you settled her claim with Reinsurance Company of America for the sum of $6,840.00, without her knowledge or permission. You caused Ms. Robinson’s endorsement to be forged onto the check issued in payment of the claim. On March 29, 1999, you negotiated the check and retained the proceeds for your own use and benefit.
You settled the claim without the knowledge or permission of your client, failed to account for or disburse client funds, failed to respond to your client’s requests for information, and failed to act with due diligence in completing the representation. Your conduct violated Rules 1.2(a), 1.4, 1.7(b), 1.15(b), 1.16(a)(2)(d), and 8.4(a)(b)(c) of the Rules of Professional Conduct.

Count II

A copy of the complaint that is the subject of Count I, supra, was served on you at your primary registration address on June 3, 1999. You failed, neglected, or refused to submit a response to the complaint. An investigatory subpoena was issued to compel you [sic] appearance before Disciplinary Counsel to answer the complaint filed by Ms. Robinson. After due and diligent efforts and numerous attempts at your home and office, the subpoena was returned unserved. You failed to cooperate in a disciplinary investigation in violation of Rules 8.1(c) and 8.4(g) of the Rules of Professional Conduct.
lflThe ODC introduced the following documentary evidence in support of the formal charges: (1) Ms. Robinson’s complaint; (2) a copy of the settlement check *721 issued by the insurer and the release signed by Ms. Robinson; (3) a letter from Ms. Robinson’s treating physician acknowledging payment of the medical expenses; (4) a copy of the ODC’s letter transmitting the complaint to respondent and information relating to respondent’s absence from her office; and (5) copies of the investigatory subpoena and information relating to the ODC’s unsuccessful attempts at service of the subpoena.
In total, the rule violations alleged by the ODC are Rules 1.2(a), 1.4, 1.7(b), 1.15(b), 1.16(a)(2)(d), 8.1(c), 8.4(a), 8.4(b), 8.4(c), and 8.4(g). We will address each of these rules separately.
Rule 1.2(a) relates to the client’s control over the scope of representation. The deemed admitted facts establish respondent settled her client’s personal injury claim without her client’s knowledge or consent. In light of these facts, the ODC has proven a violation of this rule.
Rule 1.4 relates to the attorney’s duty to communicate with his or her client. The deemed admitted facts establish respondent failed to return her client’s telephone calls and failed to keep her advised of the status of her legal matter. These facts establish a violation of Rule 1.4.
Rule 1.7(b) prohibits a lawyer from representing a client if the representation of the client may be materially limited by the lawyer’s responsibilities to another client or to a third person or by the lawyer’s own interests, unless the lawyer reasonably believes the representation will not be affected and the client consents after consultation. There is nothing in the deemed admitted facts or in the evidence submitted by the ODC which would suggest any conflict of interest on the part of respondent in connection with the representation of Ms. Robinson. The mere | mconclusory statement that respondent violated this rule, without supporting factual allegations or other evidence, is insufficient to establish a violation of the rule. Therefore, no violation of Rule 1.7(b) has been established.
Rule 1.15(b) mandates the lawyer to notify a client or third party that the lawyer has received funds in which the client or third party has an interest. It further mandates the lawyer to promptly deliver the funds to the client or third party and render an accounting if requested. The deemed admitted facts indicate respondent failed to promptly notify her client of her receipt of funds belonging to the client and failed to deliver these funds to the client. These facts establish a violation of Rule 1.15(b).
Rule 1.16(a)(2)(d) requires the lawyer to withdraw from representation if the lawyer’s mental or physical condition impairs the lawyer’s ability to represent the client. There is nothing in the deemed admitted facts or other evidence which would indicate respondent suffers from a physical or mental condition that impairs her representation of her client. The mere conclu-sory statement that respondent violated this rule, without supporting factual allegations or other evidence, is insufficient to establish a violation of the rule.[9] Therefore, no violation of Rule 1.16(a)(2)(d) has been established.
*722 Rules 8.1(c) and 8.4(g) provide that it is professional misconduct for a lawyer to fail to cooperate with the ODC. The deemed admitted facts indicate respondent refused to comply with the ODC’s requests for information or to its subpoena. These facts establish violations of Rules 8.1(c) and 8.4(g).
lnRule 8.4(a) provides that it is professional misconduct for a lawyer to violate the Rules of Professional Conduct. In light of the professional rule violations already established, a violation of this rule has been proven.
Rule 8.4(b) provides it is professional misconduct for a lawyer to commit a criminal act, especially one that reflects on the lawyer’s honesty, trustworthiness, or fitness as a lawyer. Rule 8.4(e) provides it is professional misconduct for the lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. The deemed admitted facts establish that respondent caused her client’s endorsement to be forged on the settlement check and that respondent negotiated the check and retained the proceeds for her own use and benefit. Although there is no allegation that respondent was ever criminally charged for her actions, these facts are sufficient to establish a criminal act that reflects on respondent’s honesty, trustworthiness, or fitness as a lawyer. Likewise, the act of forgery necessarily involves elements of dishonesty, fraud, deceit, or misrepresentation. These facts support a finding that respondent violated Rules 8.4(b) and 8.4(c).

Discipline to Be Imposed

Having found violations of the Rules of Professional Conduct, we now turn to a determination of an appropriate sanction for this misconduct. The purpose of disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain the appropriate standards of professional conduct, to preserve the integrity of the legal profession, and to deter other lawyers from engaging in violations of the standards of the profession. In re: Vaughan, 00-1892 (La.10/27/00), 772 So.2d 87; In re: Lain, 00-0148 (La.5/26/00), 760 So.2d 1152; Louisiana State Bar Ass’n v. Levy, 400 So.2d 1855 (La.1981). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating | ^and mitigating circumstances. In re: Redd, 95-1472 (La.9/15/95), 660 So.2d 839; Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent’s conduct is serious in nature. Her actions involve failure to communicate with her client, settlement of her Ghent’s personal injury claim without the Ghent’s knowledge or consent, her forgery of the client’s endorsement on the settlement check, and her conversion of the settlement funds over a two-month period of time.
In Louisiana State Bar Ass’n v. Hin-richs, 486 So.2d 116 (La.1986), we set forth guidelines for imposing discipline in cases involving conversion of client funds:
In a typical case of disbarment for violation of DR 9-102 [now Rule 1.15], one or more of the following elements are usually present: the lawyer acts in bad faith and intends a result inconsistent with his client’s interest; the lawyer commits forgery or other fraudulent acts in connection with the violation; the magnitude or the duration of the deprivation is extensive; the magnitude of the damage or risk of damage, expense and inconvenience caused the client is great; the lawyer either fails to make full restitution or does so tardily after extended pressure of disciplinary or legal proceedings.
*723 A three year suspension from practice typically results in cases involving similar but less aggravated factors. In such cases the lawyer is guilty of at least a high degree of negligence in causing his client’s funds to be withdrawn or retained in violation of the disciplinary rule. He usually does not commit other fraudulent acts in connection therewith. The attorney usually benefits from the infraction but, in contrast with disbarment cases, the client may not be greatly harmed or exposed to great risk of harm. The attorney fully reimburses or pays his client the funds due without the necessity of extensive disciplinary or legal proceedings.
A suspension from practice of eighteen months or two years will typically result where the facts are appropriate for a three-year suspension, except that there are significant mitigating circumstances; or where the facts are appropriate for a one-year suspension, except that there are significant aggravating circumstances.
|1SA suspension from practice of one year or less will typically result where the negligence in withdrawing or retaining client funds is not gross or of a high degree. No other fraudulent acts are committed in connection with the violation of the disciplinary rule. There is no serious harm or threat of harm to the client. Full restitution is made promptly, usually before any legal proceeding or disciplinary complaint is made. Hinrichs, 486 So.2d at 122-123 (citations omitted).
The deemed admitted facts in this case establish that respondent caused her client’s name to be forged on a settlement check and that she retained the proceeds for her own use, which would suggest the case would fall under the higher end of the disciplinary range. However, the lack of any significant client harm in this case militates against imposing a substantial sanction. As earlier stated, the record establishes that approximately two months after the issuance of the settlement check, respondent’s client executed a release in favor of the insurance company, in which she acknowledged receipt of the $6,840 settlement. This document indicates respondent’s client at least tacitly ratified the settlement of the case and agreed that she received all monies due under the settlement. The record is further devoid of any evidence that during the two-month period of the conversion, respondent obtained any benefit from her infraction.
Thus, despite respondent’s forgery of the settlement check and resulting conversion of the funds, the lack of any significant client harm caused by the conversion, combined with the failure of the ODC to produce any evidence that respondent ben-efitted from the conversion, convinces us that this case does not fall in the most severe portion of the Hinrichs range, i.e., disbarment or a three-year suspension. However, respondent’s forgery prevents the case from falling in the lowest part of the Hinrichs range, i.e., a suspension of one year or less. Considering |14all these circumstances, we conclude a two-year suspension from the practice of law is the appropriate sanction for respondent’s misconduct.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Susan L. Donnan be suspended from the practice of law in Louisiana for a period of two years. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
*724 KIMBALL, J., dissents and assigns reasons.
JOHNSON, J., concurs in result.

. Respondent has been ineligible to practice since September 3, 1999 for failure to pay bar dues and failure to comply with the mandatory continuing legal education requirements.

. Respondent had not consulted Ms. Robinson prior to negotiating the settlement, but Ms. Robinson apparently was not dissatisfied with the amount of the settlement.

. The receipt indicates respondent’s daughter signed for the certified mail.

. Supreme Court Rule XIX, § 11(E)(3) provides:
The respondent shall file a written answer with the Board and serve a copy on disciplinary counsel within twenty (20) days after service of the formal charges, unless the time is extended by the chair of the hearing committee. In the event Respondent fails to answer within the prescribed time, or the time as extended, the factual allegations contained within the formal charges shall be deemed admitted and proven by clear and convincing evidence. Disciplinary Counsel shall file a motion with the chair of the hearing committee to which the matter is assigned requesting that the factual allegations be deemed proven with proof of service of the formal charges upon the respondent. The order signed by the hearing committee chair shall be served upon respondent as provided by Section 13(b). Within twenty (20) days of the mailing of the order of the hearing committee chair deeming the factual allegations contained in the formal charges proven, the respondent may move the hearing committee chair to recall the order thus issued upon demonstration of good cause why imposition of the order would be improper or would result in a miscarriage of justice. [Emphasis added]

. The committee referred to admonitions issued December 22, 1994 and March 30, 1995 for failure to cooperate with the ODC in a disciplinary investigation.

. The disciplinary board did not cite any authority from this court in support of its position, but relied on three prior board decisions, In re: Bishop, 90-DB-027; In re: Crittenden, 94-DB-001; and In re: Elloie, 94-DB-016. It is noteworthy that these three matters were decided prior to a 1995 amendment to Supreme Court Rule XIX, § 11(E)(3) that added the language "and proven by clear and convincing evidence” to the second sentence of the rule.

. Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client (Standard 4.12); when a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client (Standard 4.42); and when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system (Standard 7.2).

. The board cited In re: Moore, 00-2616 (La. 10/19/00), 769 So.2d 1180 (fully deferred six-month suspension imposed by consent for attorney’s failure to timely deliver funds owed to a third-party medical provider); In re: Cannizzaro, 00-0413 (La.3/17/00), 758 So.2d 780 (ten-month suspension imposed by consent for attorney's failure to promptly disburse funds to a third-party medical provider and adequately communicate with a client in an unrelated matter); and In re: Kennedy, 95-1455 (La. 1/12/96), 666 So.2d 284 (one year and one day suspension imposed for attorney's lack of diligence, failure to communicate with a client, failure to promptly disburse funds entrusted by the client, failure to account for and refund unearned fees, commingling and conversion of client funds, and failure to cooperate with the ODC). However, the board acknowledged that respondent's conduct is not as egregious as Kennedy because there is no evidence she commingled or converted client funds, and that a sanction similar to Moore and Cannizzaro would be more appropriate.

. The sole mention of respondent's medical condition is a memo from the ODC’s investigator regarding the attempted service on respondent. The investigator states that he was told by respondent's daughter that she was "currently hospitalized at Greenwell Springs Hospital for severe depression and was currently on medication for that condition.” Even assuming this unsworn statement was sufficient to show respondent suffered from depression, it obviously falls far short of establishing a violation of Rule 1.16 by clear and convincing evidence.