*1132 ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
LThis disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Charles Tanner Phillips, II, an attorney licensed to practice law in Louisiana but currently on interim suspension for threat of harm to the public. In re: Phillips, 11-1811 (La.8/19/11), 69 So.3d 413.
FORMAL CHARGES
Count I — The Labree Williams Matter
In July 2010, Labree Williams paid respondent $2,250 to handle a child custody matter in which he was seeking modification of a custody decree that had previously been rendered in California. In August 2010, respondent attempted to file a petition to have the matter set for hearing, but the pleading was returned to him by the court unfiled because he had not included a copy of the prior California custody decree. Respondent did not re-file the petition, and consequently, the case was never fixed for hearing. Thereafter, Mr. Williams discharged respondent and requested a refund of the attorney’s fee he paid. When respondent failed to refund the fee, Mr. Williams filed a disciplinary complaint against him with the ODC.
In December 2010, respondent gave a sworn statement to the ODC, during which he acknowledged that Mr. Williams was “absolutely” due a refund of attorney’s fees. Nevertheless, respondent testified that he had not made the refund | ^because the fee had not been paid to him personally, but rather to the law firm with which he was previously associated. Mr. Williams disputed this, claiming he had paid the fee to respondent before he joined the law firm. Bank records obtained by the ODC reflect that Mr. Williams’ fee was not deposited to the law firm’s account. Nevertheless, respondent still has not made a refund to Mr. Williams.
The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5(f)(5) (failure to refund an unearned fee), 8.1(c) (failure to cooperate with the ODC in its investigation), and 8.4(c) (engaging in con *1133 duct involving dishonesty, fraud, deceit, or misrepresentation).
Count II — The Morlock Matter
In September 2010, Gertrude Morlock paid respondent $2,500 to represent her in a divorce and community property partition proceeding. When Ms. Morlock was not able to reach respondent by telephone, she visited his law firm and was told that he did not work there anymore. Court records confirm that no appreciable work was performed by respondent on behalf of Ms. Morlock during his representation. Moreover, respondent has not made a refund to Ms. Morlock of the fee she paid.
The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, and 1.5(f)(5).
Count III — The Britton Matter
In June 2010, Rona Britton paid respondent $1,250 to handle a community property partition. When Ms. Britton was not able to reach respondent by telephone by November 2010, she discharged him and requested a refund of the [^¡attorney's fee she paid. Respondent failed to refund the fee, informing Ms. Britton that he was “strapped for cash right now.” Court records confirm that respondent filed no pleadings on behalf of Ms. Britton during his representation.
In December 2010, Ms. Britton filed a complaint against respondent with the ODC. Respondent failed to respond to the complaint.
The ODC alleged respondent violated the following provisions of the Rulek of Professional Conduct: Rules 1.3, 1.5(f)(5), and 8.1(c).
Count TV — The Hinton Matter
In August 2010, Tiankhy Hinton paid respondent $3,250 to handle a child support and custody matter. Respondent never filed any pleadings on behalf of Mr. Hinton. Upon learning this fact, Mr. Hinton discharged respondent and requested a refund of the attorney’s fee he paid. In response, respondent claimed that he could not refund the fee because it was paid to the law firm with which he was previously associated. The law firm advised Mr. Hinton that respondent was responsible for refunding any unearned fees. Mr. Hinton subsequently filed a lawsuit against respondent in Bossier City Court, seeking a refund of the attorney’s fee. The case is pending, and no sums have been refunded to Mr. Hinton.
The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f)(5), and 1.16 (declining or terminating representation).
Count V — The Bowden Matter
In July 2009, Carreen Bowden paid respondent $3,300 to handle a child visitation matter. At the first court hearing in December 2009, respondent appeared in court without Ms. Bowden’s file and was unprepared for the hearing. Thereafter, the case was continued repeatedly throughout 2010. A hearing was 14finally set in February 2011, but respondent did not appear on that date. Thereafter, Ms. Bowden discharged respondent and requested that her file and fees be returned. Respondent did not comply with this request.
In March 2011, Ms. Bowden filed a complaint against respondent with the ODC. Respondent failed to respond to the complaint.
The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f)(5), 1.16, and 8.1(c).
Count VI — The Youngblood Matter
In March 2009, Sherry Youngblood retained respondent to handle a community property partition. Ms. Youngblood paid respondent’s quoted fee of $2,300 in install *1134 ments over the next several months. After respondent failed to appear at a scheduled January 2011 hearing in the matter, Ms. Youngblood sent a letter to respondent discharging him and requesting a refund of the attorney’s fee she paid. Respondent did not comply with this request.
In April 2011, Ms. Youngblood filed a complaint against respondent with the ODC. Respondent failed to respond to the complaint.
The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f)(5), and 8.1(c).
Count VII — The Baldwin Matter
In August 2008, Sharon Baldwin paid respondent $1,200 to complete a community property partition and obtain a qualified domestic relations order (QDRO). In April 2009, respondent filed a QDRO with the court, but the filing was rejected because certain indispensible parties had not been served. Respondent then told Ms. Baldwin that he amended the filing in April 2010, and that a rule to show cause was fixed for July 1, 2010. In November 2010, | ^respondent told Ms. Baldwin that although he had prepared the pleadings oh her behalf, they had not actually been filed. Respondent attributed this omission to his assistant’s oversight, and stated to Ms. Baldwin that he had “self-reported” his misconduct to the ODC. Respondent advised Ms. Baldwin that he had corrected the “deficiencies” and that he “was obtaining a final document” for her. Ultimately, respondent did nothing. Thereafter, Ms. Baldwin discharged respondent and requested that her file and fees be returned. Respondent did not comply with this request.
In May 2011, Ms. Baldwin filed a complaint against respondent with the ODC. Respondent failed to respond to the complaint
The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f)(5), 1.16, and 8.1(c).
Count VIII — The Spencer Matter
In April 2011, Carmen Spencer paid respondent $2,250 to handle a child custody matter. Respondent never filed any pleadings on behalf of Ms. Spencer. Upon learning this fact, Ms. Spencer discharged respondent and requested a refund of the attorney’s fee she paid. Respondent failed to refund the fee, informing Ms. Spencer that he was “dead broke.”
In May 2011, Ms. Spencer filed a complaint against respondent with the ODC. Respondent failed to respond to the complaint.
The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f)(5), 1.16, and 8.1(c).
Count IX — The Hutchinson Matter
In July 2010, Catherine Hutchinson paid respondent $2,250 to handle a child custody case for her son, Jeremy Fulghum. Respondent never filed any pleadings |fion behalf of Mr. Fulghum. Upon learning this fact, Ms. Hutchinson discharged respondent and requested a refund of the attorney’s fee she paid. By letter to Ms. Hutchinson dated March 2, 2011, respondent acknowledged the “problems” which had arisen with Mr. Fulghum’s case and agreed to refund the entire fee within thirty days; however, he failed to provide the refund as promised.
In May 2011, Ms. Hutchinson filed a complaint against respondent with the ODC. Respondent failed to respond to the complaint.
The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f)(5), 1.16, and 8.1(c).
*1135 Count X — The Ward Matter
In April 2010, Wendy Ward retained respondent to represent her in a divorce and child custody matter. Ms. Ward’s father paid respondent’s fee of $8,200 to handle the case. After filing a petition for divorce, respondent took no other significant action in the ease, and Ms. Ward was required to represent herself when respondent failed to appear for a scheduled court hearing. Ms. Ward discharged respondent and requested a refund of the attorney’s fee that was paid. Respondent did not comply with this request.
In June 2011, Ms. Ward filed a complaint against respondent with the ODC. Respondent failed to respond to the complaint.
The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f)(5), 1.16, and 8.1(c).
Count XI — The Schulz Matter
In September 2008, Dawn Schulz paid respondent $5,000 to file a civil suit on her behalf. In September 2008, respondent filed a “Petition for Breech [sic] of Fiduciary Duty” against the defendant; however, no action has been taken by either 17party in the case since the defendant answered the petition in October 2008. On the few occasions Ms. Schulz managed to contact respondent, he offered various excuses as to why nothing had been done in her ease. Nevertheless, respondent has not made a refund to Ms. Schulz of the fee she paid.
In June 2011, Ms. Schulz filed a complaint against respondent with the ODC. Respondent failed to respond to the complaint.
The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f)(5), 1.16, and 8.1(c).
Count XII — The Estes Matter
In September 2009, Jami Estes paid respondent $2,000 to handle a child custody matter. The matter was set for hearing in August 2010, but respondent failed to appear. When questioned by Ms. Estes about his failure to pursue the case, respondent claimed that a former assistant had deleted Ms. Estes’ files from his computer. He later offered Ms. Estes a different excuse for failing to appear at a subsequent hearing, telling her that he had misplaced her “paperwork.” Numerous attempts by Ms. Estes to contact respondent also went unanswered. Ms. Estes discharged respondent and requested a refund of the attorney’s fee she paid. Respondent did not comply with this request.
In July 2011, Ms. Estes filed a complaint against respondent with the ODC. Respondent failed to respond to the complaint.
The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f)(5), 1.16, and 8.1(c).
Count XIII — The Garland Matter
In July 2010, Shannon Garland paid respondent $2,000 to handle a child custody matter. The matter was set for hearing in June 2011, but respondent failed |8to appear. When questioned by Mr. Garland about his failure to pursue the case, respondent stated that he could not practice law because his license had been “suspended” for failure to comply with the mandatory continuing legal education requirements.[1] Mr. Garland discharged respondent and requested a refund of the attorney’s fee he paid. Respondent did not comply with this request.
In July 2011, Mr. Garland filed a complaint against respondent with the ODC. *1136 Respondent failed to respond to the complaint.
The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f)(5), 1.16, and 8.1(c).
Count XIV — The Lowe Matter
In May 2011, James Lowe paid respondent $1,000 to handle a divorce. After several unsuccessful efforts to reach respondent to discuss the status of the matter, Mr. Lowe learned that respondent was declared ineligible to practice law on June 7, 2011. He then discharged respondent and requested a refund of the fees he paid. Respondent did not comply with this request.
In July 2011, Mr. Lowe filed a complaint against respondent with the ODC. Respondent failed to respond to the complaint.
The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.8, 1.4, 1.5(f)(5), 1.16, and 8.1(c).

Count XV— The Jordan Matter

On June 22, 2011, respondent accepted $300 to represent Cynthia Jordan in a divorce and ancillary matters. However, respondent failed to disclose to Ms. Jordan that he had been declared ineligible to practice law effective June 7, 2011. Respondent did no work in Ms. Jordan’s legal matter and failed to respond to her 1 Requests for information. Nevertheless, he has not made a refund to Ms. Jordan of the fee she paid.
In August 2011, Ms. Jordan filed a complaint against respondent with the ODC. Respondent failed to respond to the complaint.
The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f)(5), 1.16, 5.5 (engaging in the unauthorized practice of law), and 8.1(c).
Count XVI — The Winters Matter
In January 2011, Warren Winters, Jr. paid respondent $2,300 to handle a divorce. Thereafter, Mr. Winters became concerned because the case did not appear to be moving forward as expected and he was not receiving any copies of pleadings, as he had requested. Anxious to have the case concluded, Mr. Winters began calling and texting respondent, who said he had “mailed the papers to the wrong courthouse.” Despite his commitment to correct the error, respondent failed to file anything on Mr. Winters’ behalf. Mr. Winters then discharged respondent and requested a refund of the attorney’s fee he paid. Respondent did not comply with this request.
In July 2011, Mr. Winters filed a complaint against respondent with the ODC. Respondent failed to respond to the complaint.
The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f)(5), 1.16, 5.5, and 8.1(c).
Count XVII — The England Matter
In February 2011, Tina England paid respondent $1,000 to handle a divorce. After several unsuccessful efforts to reach respondent to discuss the status of her I,ncase, Ms. England learned that her divorce action had never been filed. Nevertheless, respondent has not made a refund to Ms. England of the fee she paid.
In May 2011, Ms. England filed a complaint against respondent with the ODC. Respondent failed to respond to the complaint.
The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f)(5), and 8.1(c).
*1137 Count XVIII — The Valadez Matter
In July 2010, Joyce Valadez paid respondent $1,000 to defend her against criminal charges which she anticipated would be filed against her. Respondent advised Ms. Valadez that he would refund the entire fee if the charges were not forthcoming. Thereafter, respondent ceased communicating with Ms. Valadez about the status of her matter. Despite the fact that criminal charges were not filed, respondent never refunded any portion of the fee to Ms. Valadez.
In July 2011, Ms. Valadez filed a complaint against respondent with the ODC. Respondent failed to respond to the complaint.
The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f)(5), and 8.1(c).
Count XIX — The Laurie Williams Matter
In March 2010, Laurie Williams paid respondent $1,750 to represent her in a divorce and child custody matter. After filing a petition for divorce, respondent took no further action in the case. Upon learning this fact, Ms. Williams requested her file and a refund of any unearned portion of the attorney’s fee she paid. Respondent did not comply with this request. After discharging respondent, Ms. Williams had to hire other counsel to complete her matter.
Inin August 2011, Ms. Williams filed a complaint against respondent with the ODC. Respondent failed to respond to the complaint.
The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f)(5), and 8.1(c).
Count XX — The Hamann Matter
In 2007, Shannon Hamann paid respondent $2,200 to handle a divorce and community property partition. When respondent failed to properly advocate for her interests during the proceedings, Ms. Hamann discharged respondent and requested a refund of the attorney’s fee she paid. Respondent did not refer the fee dispute to arbitration, although his contract with Ms. Hamann provided that such disputes would be referred to the Louisiana State Bar Association’s fee arbitration program. Respondent has never refunded any portion of the fee, and Ms. Hamann had to retain and pay another attorney $1,000 to complete the representation.
The ODC alleged respondent violated Rule 1.5(f)(5) of the Rules of Professional Conduct.
Count XXI — The Patton Matter
In December 2007, Daryl Patton hired respondent on a contingency fee basis to handle a personal injury claim. After filing the petition for damages, respondent failed to diligently pursue the matter or communicate with Mr. Patton about the status of his claim. Mr. Patton subsequently hired another attorney to handle the matter.
In August 2011, Mr. Patton filed a complaint against respondent with the ODC. Respondent failed to respond to the complaint.
The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, and 8.1(c).
_[¿2Count XXII — The Boon Matter
In August 2010, Sherry Boon paid respondent $3,250 to handle a divorce and child custody matter. After several unsuccessful efforts to reach respondent to discuss the status of her case, Ms. Boon learned that respondent never filed any pleadings on her behalf. Upon learning this fact, Ms. Boon requested a full refund of the attorney’s fee she paid. Respondent did not comply with this request.
*1138 In August 2011, Ms. Boon filed a complaint against respondent with the ODC. Respondent failed to respond to the complaint.
The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f)(5), and 8.1(c).
Count XXIII — The Jennifer Smith Matter
In May 2009, Jennifer Smith paid respondent $1,000 to handle a child custody matter. Thereafter, respondent failed to communicate with Ms. Smith and failed to take any action in her case. Respondent also failed to refund any portion of the attorney’s fee.
In August 2011, Ms. Smith filed a complaint against respondent with the ODC. Respondent failed to respond to the complaint.
The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f)(5), and 8.1(c).
Count XXIV — The Michael Smith Matter
In March 2010, Michael Smith paid respondent $3,000 to defend him against criminal charges. However, respondent failed to communicate with Mr. Smith and abandoned his defense, following which Mr. Smith was assigned an indigent defender. In his disciplinary complaint against respondent, filed in September 2011, Mr. Smith requested a refund of the attorney’s fee he paid. Respondent has 113not refunded any portion of the fees and failed to respond to the disciplinary complaint.
The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f)(5), and 8.1(c).
Count XXV — The Baker Matter
In February 2011, Brandi Baker paid respondent $500 to handle a child support and custody matter. Thereafter, respondent failed to communicate with Ms. Baker and failed to take any significant action in her legal matter. Nevertheless, no sums have been refunded to Ms. Baker.
In September 2011, Ms. Baker filed a complaint against respondent with the ODC. Respondent failed to respond to the complaint.
The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f)(5), and 8.1(c).
Count XXVI — The Trust Account Matter
In November 2011, the ODC received notification of an $89 overdraft in respondent’s client trust account. The ODC forwarded a certified letter to respondent seeking an explanation for the overdraft as well as copies of his trust account statements for the previous six months. The letter was returned marked “return to sender, unable to forward.” The ODC sent notices of the disciplinary complaint to respondent’s bar registration addresses, but the notices were returned marked “unable to forward.”
The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.15 (safekeeping property of clients or third persons) and 8.1(c).
| uCount XXVII — The Matthews Matter
In September 2009, Kathryn Matthews paid respondent $6,500 to handle the succession of her deceased husband as well as her daughtér’s divorce. Thereafter, Ms. Matthews experienced difficulty communicating with respondent. Respondent completed neither the divorce nor the succession, and no sums have been refunded to Ms. Matthews.
In March 2012, Ms. Matthews filed a complaint against respondent with the ODC. Respondent failed to respond to the complaint.
*1139 The ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5(f)(5), and 8.1(c).
DISCIPLINARY PROCEEDINGS
In August 2012, the ODC filed formal charges against respondent. Respondent failed to answer the formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee’s consideration.

Hearing Committee Report

After considering the ODC’s deemed admitted submission, the hearing committee adopted the deemed admitted factual allegations of the formal charges as its factual findings. Based on these facts, the committee determined that respondent violated Rules 1.3, 1.4, 1.5(f)(5), 1.15, 1.16, 5.5, 8.1(c), and 8.4(c). However, the committee did not find sufficient evidence to support a violation of Rule 5.5 in the Winters matter.
[ 1sThe committee determined respondent violated duties owed to his clients, the public, the legal system, and the legal profession. Respondent’s incompetence, lack of diligence, and failure to communicate were knowing. Respondent knowingly failed to refund unearned fees, provide accountings, and place disputed fees in trust, inasmuch as he received requests from clients for the return of fees and he failed to take appropriate action. There can be no doubt that the numerous misrepresentations respondent made to clients were intentional. Respondent’s failure to cooperate in the disciplinary investigation of twenty-four of the twenty-seven matters was at best knowing, and at worst intentional.
Respondent’s failure to perform the services he was hired to provide delayed his clients’ legal matters and no doubt caused them much frustration. In failing to return unearned fees, respondent caused damage to his clients by depriving them of their funds. Moreover, respondent took advantage of clients of limited financial means who, by and large, were seeking legal counsel in emotionally charged legal matters such divorce and child custody proceedings. Respondent’s overall incompetence and lack of honesty with his clients is the type of conduct that erodes the trust and confidence of the public in the legal profession and the legal system.
After reviewing the ABA’s Standards for Imposing Lawyer Sanctions, the committee determined the applicable baseline sanction is suspension.
The committee found the following aggravating factors present: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, vulnerability of the victims, substantial experience in the practice of law (admitted 2000), and indifference to making restitution. The committee determined the only mitigating factor present is the absence of a prior disciplinary record.
b (¡After further considering respondent’s misconduct in light of the number of violations, the combination of the multiple types of violations, the apparent length of time over which the violations occurred,[2] as well as the other aggravating factors, *1140 the committee recommended respondent be disbarred. The committee further recommended that respondent be required to refund all unearned fees and reimburse the Louisiana State Bar Association’s Client Assistance Fund as appropriate. Finally, the committee recommended respondent be assessed with all costs of these proceedings.
Neither respondent nor the ODC filed an objection to the hearing committee’s report. However, respondent filed correspondence with the disciplinary board wherein he indicated that his misconduct was unintentional and resulted from his mental and physical health problems. He further indicated that he cannot attend or defend himself in these proceedings as he is almost homeless, unemployed, and has no means by which to get help.

Disciplinary Board Recommendation

After reviewing the record, the disciplinary board determined that the hearing committee’s factual findings are not manifestly erroneous and are supported by the documentary evidence in the record. Based on these facts, the board determined that respondent violated Rules 1.3, 1.4, 1.5(f)(5), 1.15, 1.16, 5.5, 8.1(c), and 8.4(c) of the Rules of Professional Conduct.
The board determined respondent violated duties owed to his clients, the public, the legal system, and the legal profession. Respondent acted knowingly and intentionally, and his misconduct resulted in actual injury. After reviewing the ABA’s Standards for Imposing Lawyer Sanctions, the board determined the applicable baseline sanction is disbarment.
| ;7The board found the following aggravating factors present: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, refusal to acknowledge the wrongful nature of conduct, vulnerability of the victims, substantial experience in the practice of law, and indifference to making restitution. The board found the following mitigating factors present: absence of a prior disciplinary record and personal or emotional problems.[3]
Turning to the issue of an appropriate sanction, the board noted that in prior cases involving similar misconduct, this court has imposed disbarment. In In re: McHugh, 09-1706 (La.11/20/09), 22 So.3d 159, the court imposed disbarment upon an attorney who neglected several legal matters, failed to communicate with several clients, failed to account for or refund unearned fees, failed to fulfill obligations upon the termination of representations, and engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation. In In re: Williams, 06-2578 (La.2/2/07), 947 So.2d 710, the court imposed disbarment upon an attorney who neglected legal matters, failed to communicate with clients, failed to protect a client’s interest upon termination of the representation, and failed to cooperate with the ODC in its investigations.
In consideration of these cases, the board recommended respondent be disbarred. The board also recommended he pay restitution to his clients and to the Client Assistance Fund, as appropriate. Finally, the board recommended respondent be assessed with the costs and expenses of these proceedings. Four board members dissented and would recommend permanent disbarment.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
*1141 J^DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57.
In cases in which the lawyer does not answer the formal charges, the factual allegations of those charges are deemed admitted. Supreme Court Rule XIX, § 11(E)(3). Thus, the ODC bears no additional burden to prove the factual allegations contained in the formal charges after those charges have been deemed admitted. However, the language of § 11(E)(3) does not encompass legal conclusions that flow from the factual allegations. If the legal conclusion the ODC seeks to prove (i.e., a violation of a specific rule) is not readily apparent from the deemed admitted facts, additional evidence may need to be submitted in order to prove the legal conclusions that flow from the admitted factual allegations. In re: Donnan, 01-3058 (La.1/10/03), 838 So.2d 715.
The record in this deemed admitted matter supports a finding that respondent neglected legal matters, failed to communicate with his clients, failed to account for or refund unearned fees, failed to fulfill obligations upon the termination of representations, practiced law while ineligible to do so, and failed to cooperate with the ODC in its investigations. Based on the deemed admitted facts and the other evidence in the record, we agree that respondent has violated Rules 1.3, 1.4, 1.5(f)(5), 1.15, 1.16, 5.5, 8.1(c), and 8.4(c) of the Rules of Professional Conduct.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the | ^profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
The record supports a finding that respondent violated duties owed to his clients, the public, the legal system, and the legal profession. Respondent acted knowingly and intentionally, resulting in actual harm to his clients. Respondent repeatedly accepted fees from his clients, but did no work in the legal matters and failed to refund any of the fees. The applicable baseline sanction in this matter is disbarment. The aggravating and mitigating factors found by the disciplinary board are supported by the record.
Turning to the issue of an appropriate sanction, the case law cited by the board reflects that we have imposed disbarment for misconduct similar to that committed by respondent. Based on this jurisprudence, we will adopt the board’s recommendation and disbar respondent. We further order respondent to pay restitution to his clients and to the Client Assistance Fund.[4]
*1142 DEGREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Charles |2nTanner Phillips, II, Louisiana Bar Roll number 26699, be and he hereby is disbarred. His name shall be stricken from the roll of attorneys and his license to practice law in the State of Louisiana shall be revoked. It is further ordered that respondent make restitution to his victims and repay to the Louisiana State Bar Association’s Client Assistance Fund any amounts paid to claimants on his behalf. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. In fact, on June 7, 2011, respondent was declared ineligible to practice law for failure to comply with the mandatory continuing legal education requirements.

. The committee noted that the majority of the violations appear to have occurred over the course of approximately one year, from mid-summer 2010 through July 2011.

. At respondent's request, the ODC obtained and filed a copy of respondent’s medical records, which are under seal, for the disciplinary board’s review.

. Specifically, restitution should be made in the following amounts: $2,250 to Labree Williams; $2,500 to Trudy Morlock; $1,250 to the Client Assistance Fund on behalf of Rona Britton; $3,250 to Tiankhy Hinton; $3,300 to Carreen Bowden; $2,300 to Sherry Youngblood; $1,200 to Sharon Baldwin; *1142 $2,250 to the Client Assistance Fund on behalf of Carmen Spencer; $2,250 to Catherine Hutchinson; $3,200 to Wendy Ward; $2,650 to Dawn Schulz or to the Client Assistance Fund, if the Fund has paid Ms. Schulz; $2,000 to Jami Estes; $2,000 to Shannon Garland; $1,000 to James Lowe; $300 to the Client Assistance Fund on behalf of Cynthia Jordan; $2,300 to the Client Assistance Fund on behalf of Warren Winters; $1,000 to Tina England; $250 to Joyce Valadez; $750 paid to the Client Assistance Fund on behalf of Joyce Valadez; $1,750 to Laurie Williams; $2,200 to Shannon Hamann; $3,250 to Sherry Boon; $1,000 to Jennifer Smith; $3,000 to Michael Smith; $500 to Brandi Baker; $1,500 to Karen Matthews; and $5,000 to the Client Assistance Fund on behalf of Karen Matthews.