PER CURIAM
_JjThis disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Greta L. Wilson, an attorney licensed to practice law in Louisiana but currently inactive.[1]
FORMAL CHARGES
15-DB-041
In May 2013, respondent filed suit on behalf of Lawrence Gates, Jr., without his consent or authorization, regarding funds recovered from the sale of property located in New Orleans. After the suit was filed, respondent received a check in the amount of $20,141. On May 21, 2013, respondent affixed Mr. Gates’ signature to the check and deposited it into her client trust account. Upon learning of this, Mr. Gates retained attorney Herbert A. Cade. In January 2014, Mr. Cade sent respondent a demand letter requesting that he issue a cashier’s check made payable to Mr. Gates in the aforementioned amount. Respondent complied with this request in February 2014. Prior to that time, however, Mr, Gates had received no funds from respondent.
| gIn January 2014, Mr. Cade filed a disciplinary complaint against respondent regarding these events. In response to the complaint, respondent indicated that Mr. Gates had closed his file in the matter because he was satisfied with her response and compliance with his demand. In a supplementary response to the complaint, respondent described a personal illness and her father’s terminal illness, both of which she claimed contributed to the delay in forwarding the funds to Mr. Gates.
In August 2014, respondent gave a sworn statement to the ODC in which she acknowledged receiving the funds from the court registry and depositing the funds in her trust account. Respondent claimed that she was entitled to one-third of the $20,141 ($6,713.67). However, the funds in her account dipped below $13,427.34 on numerous occasions between the date of deposit and the date of her issuance of the cashier’s check to Mr. Gates. Respondent was unable to provide a copy of her contract with Mr. Gates and the trust account records reflect that the refund did not come from her trust account.
The ODC alleged respondent’s misconduct violated the following provisions of the Rules of Professional Conduct: Rules 1.15 (safekeeping property of clients or third persons), 1.16 (obligations upon termination of the representation), 3.3 (false statement of material fact or law to a tribunal), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).
15-DB-058
On January 8, 2014, respondent filed an ex parte motion for order to enroll as counsel of record in the matter of New Orleans Redevelopment Authority v. Harry Lee Pittman, et al., No. 2009-2899, Div. “M,” Civil District Court, Parish of Orleans. In the pleading, respondent indicated that she was retained as counsel by *42 |aMr. Pittman for the sole purpose of withdrawing funds deposited in connection with the matter. This was followed by an ex parte motion for order to withdraw funds from the registry of the court. In' the pleading, respondent again identified herself as counsel for Mr. Pittman.'
In connection with the filings, the court ordered disbursement of a check in the amount of $32,959.14 (together with interest) payable to Mr, Pittman and respondent. On February 18, 2014, the clerk issued a check in the amount of $83,220.81 payable to Mr. Pittman and respondent. On March 11, 2014, the check was negotiated, bearing the purported endorsements of Mr. Pittman and respondent.
In reality, Mr. Pittman had never hired or even met respondent. Due to physical limitations, which existed at the time of the issuance of the check, Mr. Pittman would not have been physically able to sign his name to endorse the check. Upon learning of respondent’s actions, Mr. Pittman enlisted the assistance of attorney Edwin R. Murray, who attempted to obtain information from respondent relative to this matter.
Respondent provided Mr. Murray with a copy of a contract for services executed by Zealous Pittman, the brother of Mr. Pittman. The contract identifies Zealous as having power of attorney over Mr. Pittman; however, no such power of attorney existed or was in effect at that time. No proceeds from the monies obtained by respondent through her actions were distributed to Mr. Pittman or to any other party on his behalf.
The ODC alleged respondent’s misconduct violated the following provisions of the Rules of Professional Conduct; Rules 8.4(a), 8.4(c), and 8.4(d),
DISCIPLINARY PROCEEDINGS
| ¿The. ODC filed two sets of formal charges against respondent under disciplinary board docket numbers 15-DB-041 and 15-DB-058, Respondent failed to answer either set of formal charges.[2] Accordingly, the factual' allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3).
In March 20Í6, the matters were consolidated by order of the hearing committee chair. No formal hearing was held, but the parties, were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee’s consideration.

Hearing Committee Report

After considering the ODC’s deemed admitted submission, the hearing committee, noting that the factual allegations in the formal charges were deemed admitted, accepted those facts as true and correct. Based on those facts, the committee determined respondent violated the Rules of Professional Conduct as alleged in the formal charges.
*43 The committee determined that by obtaining funds as to two clients by fraudulent methods, and then converting those funds to her own use, respondent violated duties owed to her clients, the public, the legal system, and the legal profession. Respondent acted knowingly and intentionally, causing actual harm to her clients. After considering the ABA’s Standards for Imposing Lawyer Sanctions, the committee determined that the baseline sanction is disbarment.
|fiIn aggravation, the committee found a dishonest or selfish motive, a pattern of misconduct, multiple offenses, vulnerability of the victims, and substantial experience in the practice of law (admitted 1989). In mitigation, the committee found the absence of a prior disciplinary record.[3]
After also considering this court’s prior jurisprudence addressing similar misconduct, the committee recommended respondent be disbarred. The committee further recommended respondent be assessed with the costs and expenses of this proceeding.
Neither respondent nor the ODC filed an objection to the hearing committee’s report and recommendation.

Disciplinary Board Recommendation

After reviewing these- consolidated matters, the 'disciplinary board determined that the factual allegations of the formal charges are deemed admitted and proven by clear and convincing evidence. The board further determined that the committee correctly applied the Rules of Professional Conduct, with one exception. In 15-DB-041, the board declined to find a violation of Rule 1.16, which concern's an attorney’s duties upon termination of a client, noting that there is no evidence showing that an attorney-client relationship ever formed.
The board determined respondent violated duties owed to the legal system and the legal profession by converting Mr. Gates’ and Mr. Pittman’s money, by acting on their behalf without having the authority to do so, and by causing the ODC to expend additional resources in its investigation of these matters. Her conduct was knowing, if not intentional, and caused significant actual harm. She knowingly converted Mr. Gates’ funds by’ placing the funds in her trust-account | (¡and then allowing the account balance to fall below the amount required to avoid (inversion. Respondent did not disburse Mr. Gates’ funds until his attorney contacted her to demand them. She collected Mr. Pittman’s funds but failed to disburse them. After considering the ABA’s Standards for Imposing Laimjer Sanctions, the- board determined the baseline, sanction is disbarment. The board agreed with the. committee’s , assessment of aggravating and mitigating factors.
After further considering this court’s prior jurisprudence addressing similar misconduct, the board recommended respondent'be disbarred. The board also recommended respondent be required to pay restitution to Mr. Pittman. The board further recommended respondent be assessed with the costs and expenses of this'proceeding.
Neither respondent nor the ODG filed an objection to the disciplinary board’s report and recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. *44 Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La. 10/2/09), 18 So.3d 57.
In cases in which the lawyer does not answer the formal charges, the factual allegations of those charges are deemed admitted. Supreme Court Rule XIX, § 11(E)(3). Thus, the ODC bears no additional burden to prove the factual allegations contained in the formal charges after those charges have been deemed admitted. However, the language of § 11(E)(3) does not encompass legal conclusions that flow from the factual allegations. If the legal conclusion the ODC seeks to prove (i.e., a violation of a specific rule) is not readily apparent from the adeemed admitted facts, additional evidence may need to be submitted in order to prove the legal conclusions that flow from the admitted factual allegations. In re: Donnan, 01-3058 (La. 1/10/03), 838 So.2d 715.
The evidence in the record of this deemed admitted matter supports a finding that respondent, without having the authority or consent to do so, filed suit and enrolled as counsel in another suit for the purpose of obtaining funds, and then converted those funds to her own use. Based on these facts, respondent has violated the Rules of Professional Conduct as found by the disciplinary board.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La. 1984).
The record also supports a finding that respondent knowingly, if not intentionally, violated duties owed to her clients, the legal system, and the legal profession, causing actual harm. The baseline sanction for this type of misconduct is disbarment. Like the board, we also agree with the committee’s assessment of aggravating and mitigating factors.
In Louisiana State Bar Ass’n v. Hinrichs, 486 So.2d 116 (La. 1986), the court established a range of sanctions addressing misconduct involving the conversion of client funds. Specifically relevant to the instant matter is the court’s determination that disbarment is warranted when
|sone or more of the following elements are present: the lawyer acts in bad faith and intends a result inconsistent with his client’s interest; the lawyer commits forgery or other fraudulent acts in connection with the violation; the magnitude or the duration of the deprivation is extensive; the magnitude of the damage or risk of damage, expense and inconvenience caused the client is great; the lawyer either fails to make full restitution or does so tardily after extended pressure of disciplinary or legal proceedings.
Respondent’s misconduct squarely falls into this category. By failing to disburse funds to Mr. Pittman or Mr. Gates, respondent demonstrated that she intended a result inconsistent with their interests. By all indications, she forged the signature on Mr. Gates’ check from the clerk of court, and likewise, she endorsed Mr. Pitt *45 man’s check on his behalf without apparent authorization. The magnitude and the duration of the deprivation has been extensive and both parties were greatly inconvenienced. Mr. Gates was deprived of his funds for nine months and had to undertake legal action to obtain the $20,141 to which he was entitled. Respondent only paid Mr. Gates after receiving a demand letter from his attorney and after the disciplinary complaint had been filed. Mr. Pittman has still not received the $33,220.81 to which he has been entitled since February 2014, despite the efforts of his attorney.
Considering Hinrichs. and the numerous aggravating factors present, we will adopt the board’s recommendation and impose disbarment. We will also order respondent to pay restitution to Mr. Pittman.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Greta L. Wilson, Louisiana Bar Roll number 19834, be and she hereby is disbarred. Her name shall be stricken from the roll of attorneys and her license to practice law in |9the State of Louisiana shall be revoked. It is further ordered that respondent shall make restitution of $33,220.81, plus legal interest, to Harry Lee Pittman. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. Respondent's status with the Louisiana State Bar Association has been inactive since September 17, 2016.

. On February 24, 2016, after the factual allegations of the formal charges in 15-DB-041 were deemed admitted, respondent filed a motion to recall the deemed admitted order, In her letter to the disciplinary board, respondent stated that she did not receive service of formal charges, has not practiced law in over one year, and is rarely in New Orleans. She also requested that "this matter be placed into mitigation so that whatever issues need to be resolved, be resolved expeditiously, amicably, and withput the need for further action.” The hearing committee chair granted her motion and gave her twenty days to file an answer to the formal charges. When respondent failed to do so, the ODC again moved to have all formal charges deemed admitted.

. The committee acknowledged that respondent had referenced emotional problems regarding an undisclosed personal illness and her father’s terminal illness, but ultimately declined to adopt this factor in mitigation since there was no further evidence on either issue and since there was no' causal connection between the personal issues and the misconduct.