PER CURIAM.
| ,This disciplinary ' matter arises 'from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent,- Kerry Dion Brown, an attorney licensed to practice law in Louisiana but currently on interim suspension for, threat of harm to the public. In re: Brown, 11-2748 (La.12/15/11), 76 So.3d 416.
*388 FORMAL CHARGES

Count I

Respondent represented an elderly client, Evangeline Johnson, in a personal injury matter. Several third-party providers had liens and/or written agreements whereby respondent guaranteed payment of their fees in the case. In April 2010, respondent settled Ms. Johnson’s claim and deposited a total of $99,235.14 into his client trust account, but there is no record of any disbursements by respondent to his client after the settlement. He also failed to pay third-party medical providers and a mediator. In September and October of 2010, respondent’s trust account dropped to a negative balance.
In October 2013, respondent pleaded guilty to forgery, a violation of La. R.S. 14:72; theft of the assets of an aged person, a violation of La. R.S. 14:67.21; and monetary instrument abuse, a violation of La. R.S. 14:72.2. Respondent was given a five-year suspended sentence for each count, placed on probation, and ordered to pay restitution to Ms. Johnson in the amount of $58,041.09.
|2The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 8.4(b) (commission of a criminal act reflecting adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer) and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

Count II

On September 21, 2010, respondent’s client trust account did not have a sufficient balance to cover a check in the amount of $8,859.40. Accordingly, the bank returned the check unpaid. However, the bank did pay a $3,460 check, resulting in an overdraft in the trust account of $2,945.56. Respondent cured the negative balance on September 24, 2010 by making a cash deposit of $3,800.
On May 7, 2010, respondént issued a $4,200 check to River Parish Chiropractic to pay a client’s medical expenses. The check was not presented for payment until October 13, 2010, at which time the balance of respondent’s trust account was not sufficient to cover the check. The bank nevertheless paid the check, resulting in an overdraft in the trust account of $488.94. Respondent cured the negative balance the following day by making a cash deposit of $500. Furthermore, during the five-month period that the check was outstanding, respondent converted third-party funds by allowing the balance of his trust account to fall below $4,200 on multiple occasions.
A review of respondent’s bank records revealed multiple occurrences of conversion of funds owed to Premier Medical Rehab (“Premier”). Premier had rendered medical services to seven of respondent’s personal injury clients. Premier had a lien and/or a written agreement whereby respondent guaranteed | ¡.payment of the client’s fees in each case. Although respondent settled each of the cases, he failed to pay Premier, instead converting these funds to his own use.[1]
Respondent represented Jerry Hubbard in a personal injury matter. In July 2010, respondent settled the claim and deposited $29,000 into his client trust account. He disbursed the settlement funds and issued a check to Mr. Hubbard. Respondent also *389 issued a check in the amount of $7,000 to his nephew, Patrick Millet, Jr., referencing the “Hubbard fee.” Mr. Millet was working in respondent’s law office but was not an attorney.
In October 2010, the ODC received another overdraft notice from respondent’s bank. The ODC made numerous requests to respondent for trust account bank statements and supporting documents, but respondent failed to respond to these requests. Respondent eventually appeared for a sworn statement in February 2011, but he produced only partial statements for his trust account. Ultimately, the ODC subpoenaed and received the requested bank records directly from respondent’s financial institution to complete its investigation.
The ODC alleged that respondent’s conduct violated the. following provisions of the Rules of Professional Conduct: Rules 1.15(a) (safekeeping property of clients or third persons), 1.15(d) (failure to timely remit funds to a client or third person), 5.4(a) (a lawyer shall not share legal fees with a nonlawyer), 8.1(c) (failure to cooperate with the ODC in its investigation), and 8.4(c).

Count III

Respondent represented Jerry Hubbard, Delilah and Ronald Firmin, and Jeanne Johnson in personal injury claims. OpenSided MRI of New Orleans' (“OSM”) rendered medical services to each of them. OSM executed a contract |4with respondent whereby he agreed to pay OSM within ten days of receipt of funds paid through settlement or judgment. Although respondent settled each case, he failed to pay OSM. The balance in respondent’s trust account dropped below the amounts necessary to pay OSM on multiple occasions, indicating a conversion of client funds.[2] In the Johnson case, respondent failed to appear for a scheduled sworn statement and failed to respond to the associated disciplinary complaint. In thé • Firmin case, respondent refused to provide the ODC with copies of settlement statements as requested.
. The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.15(a), 1.15(d), 8.1(c), and 8.4(c).

Count IV

Respondent represented Cynthia Bras-seaux, Ronald Firmin, Theresa Sanders, and Evangeline Johnson in personal injury claims. Diagnostic Management Affiliates (“DMA”) financed medical .tests and surgery for these clients. Respondent agreed to pay DMA out of the funds from client settlements. Respondent settled each case, but he failed to pay DMA, despite numerous requests. DMA obtained a default judgment against respondent which has not been satisfied.[3] The balance in respondent’s account was overdrawn on several occasions, indicating a conversion of client funds. Respondent also failed to provide the ODC with copies of settlement statements for these clients. ■
| RThe ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.15(a), 1.15(d), 8.1(c), and 8.4(c).

*390
Count V

Joseph Murray is a mediator with whom respondent contracted to mediate in the Cynthia Brasseaux case. The mediation occurred in January 2010 and lasted for five hours, but the case did not settle at the time. Respondent subsequently settled the case, but he failed to pay Mr. Murray for services rendered. Mr. Murray made numerous requests for payment, but he was not successful. Respondent converted funds from the settlement to some other use. The matter was referred to the -Louisiana State Bar Association’s Practice Assistance Counsel; however, respondent failed to respond or cooperate. The ODC sent two notices of the associated disciplinary complaint to respondent at his primary bar registration address, but he failed to file a'response.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.15(a), 1.16(d), 8.1(c), and 8.4(c).

Count VI

In 2008, Raymond Frank, Sr. retained respondent to represent him in a legal matter, for which he paid respondént $1,500. Mr. Frank filed a disciplinary complaint with the ODC alleging that respondent had refused to communicate with him about the status of the case and failed to diligently represent him. Respondent never responded to the complaint and did not return the unearned fees, despite Mr. Frank’s request for same. The ODC subpoenaed respondent to appear and produce certain documents, to no avail.
|fiThe ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5(f) (failure to refund an unearned fee), 8.1(c), arid 8.4(c).

Count VIII

[4]

•In December 2010, Jeanette Toney paid respondent $2,000 to represent her in divorce proceedings. The only work performed by respondent was: writing two letters to the judge requesting either a continuance or to reset a hearing that was previously passed without the attorney being present. Respondent allowed Ms. To-ney’s husband to procure a default judgment ¿gainst her on a rule for interim and final spousal support. Respondent failed to communicáte with Ms. Toney, who only discovered the status of the case when she was served with a rule for contempt for failure to pay spousal support. Ms. To-ney had to hire another' attorney iñ an effort to terminate spousal support. When her attorney failed to get the judgment annulled, Ms. Toney filed a disciplinary complaint against respondent. Respondent did' not file a response to the complaint.
The ODC alleged that respondent’s conduct violated the' following provisions of the Rules of Professional Conduct: Rules 1.3,1.4,1.5(f), 8.1(c), and 8.4(c).

Count IX

In May 2011, Delano Burton paid respondent $950 to represent him in a child support matter. Before the case commenced, the child’s mother decided not to proceed with pursuing child support. Mr. Burton requested , a , refund, but | respondent failed to return his calls and messages. Mr. Burton then requested assistance from another-attorney. Thereafter, respondent indicated that he had *391 earned the fee and stated that he would send a copy- of- the work product to the other attorney, but he failed to send the copies as promised. Respondent also failed .to provide an accounting and failed to-return the unearned fee. Notice of. the associated disciplinary complaint was sent via certified mail to respondent’s primary bar registration address, .-Respondent did not retrieve the correspondence or provide a response to the complaint.
The ODC alleged that rfesp'ondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.5(f), 8.1(c), and 8.4(c).

Count X,

In July 2009, Monique J. Campbell hired respondent to represent her minor child in a personal injury matter, which eventually settled. Complainant’s medical.bills were included in the settlement and listed in .the disbursement letter, but, the bills were never paid. .Two notices of the associated disciplinary complaint were sent to respondent via certified mail. .Both-notices were returned with an indication that respondent refused to claim, the correspondence.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.15(a), 1.15(d), 8.1(c), and 8.4(c).

Count XI

In July 2011, Geraldine B. Watkins hired respondent to handle a succession, for which she- paid respondent $1,000. Thereafter, respondent failed to communicate with Ms. Watkins and failed to perform any work in the'matter. Respondent also failed tó provide an accounting to Ms. Watkins, despite her | ^request. Notice of the associated disciplinary ‘complaint was delivered to respondent, but he did not reply to the complaint.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct:;. Rules 1.5(f), 8.1(c), and 8.4(c). .

Count XII

In May 201Í, Stephen R. Lane hired respondent t’o represent him and his mother in a personal injury matter. Shortly thereafter, the ease settled without the knowledge or‘authority of Mr.-Lane or his mothér. ' Mr. Lane made numerous attempts' to contact- respondent about the status'of his case, to no avail. Mr. Lane’s phone calls and messages were never returned. Mr. Lane visited "respondent’s office for an appointment and respondent never showed. Mr. Lane contacted the insurance company and learned that respondent had • received an unauthorized settlement check on August 22, 2011, and he cashed it the next -day by forging thé signature of Mr. Lane. There"were doctor bills -that were: due in connection''with the settlement,'but they were never paid,
'The ODC sent notice of the associated disciplinary complaint to respondent’s bar registration addresses. The notice mailed to respondent’s primary, address was returned marked not deliverable as addressed and unable to forward. The notice mailed to respondent’s secondary addréss was returned marked unclaimed.
The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional. Conduct: Rules 1.4,1.15(a), 8.1(c), and 8.4(c).
^DISCIPLINARY PROCEEDINGS
In May 2015, the ODC filed formal charges against respondent. Respondent failed to answer the formal charges: ■ Accordingly, the factual allegations contained therein were deemed- admitted and proven by clear and convincing evidence pursuant to Supreme, Court Rule XIX, § . 11(E)(3). No formal- hearing was held,-but the parties were given- an opportunity to file with *392 the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee’s consideration.

Hearing Committee Report

After reviewing the ODC’s deemed admitted submission, the hearing committee found that the factual allegations in the formal charges were deemed admitted and proven by clear and convincing evidence. Based on those facts and the supporting evidence submitted by the ODC, the committee found respondent violated the Rules of Professional Conduct as charged.
The committee determined respondent violated a duty owed to his clients by failing to safeguard money entrusted to him for their benefit and by failing to provide legal services in an adequate and competent manner. He violated a duty owed to third-party medical providers and mediators by failing to safeguard money owed to them for services rendered. He violated a duty owed to the public by engaging in- criminal conduct. He violated a duty owed to the legal profession by failing to cooperate with the ODC in its investigation.
Respondent acted knowingly and intentionally by engaging in criminal conduct, by failing to pay settlement funds and subsequently converting money owed to third-party medical providers and a mediator for his own personal use, by accepting money from his clients and failing to perform legal services in an Inadequate and competent manner, and by refusing to respond to several complaints and refusing to appear for a sworn statement after being subpoenaed.
Respondent caused actual injury to his clients by failing to communicate with them, by settling claims without their knowledge, by converting funds to his own use, and by failing to pay third-party providers. In the Toney matter, he allowed Ms. Toney’s husband to procure a default judgment and obtain an award of spousal support without Ms. Toney’s knowledge, and Ms. Toney had to hire another attorney who was unable to have the judgment annulled. In the Johnson matter, he failed to disburse settlement funds to his elderly client and was then convicted of criminal forgery and theft. After considering the ABA’s Standards for Imposing Lawyer Sanctions, the committee determined the baseline sanction is disbarment.
In aggravation, the committee found a pattern of misconduct, multiple offenses, a dishonest or selfish motive, and substantial experience in the practice of law (admitted 2001). The sole mitigating factor found by the committee was the absence of a prior disciplinary record.
After considering this court’s prior jurisprudence addressing similar misconduct, the committee recommended respondent be permanently disbarred. The committee also recommended that respondent be ordered to make full restitution to his victims and that he be assessed with the costs and expenses of this proceeding.
Neither respondent nor the ODC filed an objection to the hearing committee’s report and recommendation.

Disciplinary Board Recommendation

After review, the disciplinary board determined that the hearing committee’s factual findings in this deemed admitted matter are supported by the factual ^^allegations in the formal charges and/or by the evidence submitted in support of those allegations. The board also found respondent violated the Rules of Professional Conduct as alleged in the formal charges.
The board determined respondent clearly violated duties owed to his clients, the public, the legal system, and the legal pro *393 fession. He acted intentionally and knowingly. His misconduct resulted in actual injury to multiple clients and third-party providers. He failed to adequately communicate with his clients and failed to return unearned fees and settlement funds, thereby converting client and third-party funds to his own use. His misconduct resulted in a criminal conviction, which evidences his intentional engagement in conduct involving dishonesty, fraud, deceit, and misrepresentation that seriously adversely reflects on his fitness to practice law. After considering the ABA’s Standards for Imposing Lawyer Sanctions, the board determined the baseline sanction is disbarment.
In aggravation, the board found a pattern of misconduct, multiple offenses, a dishonest or selfish motive, refusal to acknowledge the wrongful nature of the conduct, substantial experience in the practice of law, indifference to making restitution, and illegal conduct. The sole mitigating factor found by the board was the absence of a prior disciplinary record.
After considering respondent’s conduct in light of the permanent disbarment guidelines set forth in Supreme Court Rule XIX, Appendix E, as well as this court’s prior jurisprudence addressing similar misconduct, the board recommended he be permanently disbarred. The board also recommended respondent be ordered to make restitution to his clients and aggrieved third-party providers. Finally, the board recommended • respondent pay the costs and expenses of this proceeding.
Neither respondent ñor the ODC filed an objection to the disciplinary board’s recommendation.
J^DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this- court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing‘evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57.
In cases in which the lawyer does not answer the formal charges, the factual allegations of those charges are deemed admitted. Supreme Court Rule XIX, § 11(E)(3). Thus, the ODC bears no additional burden to prove the factual allegations contained in the formal charges after those charges have been deemed admitted. However, the language of § 11(E)(3) does not encompass legal conclusions that flow from the factual allegations. If the legal conclusion the ODC seeks to prove (i.e., a violation of a specific rule) is not readily apparent from the deemed admitted facts, additional evidence may need to be submitted in order to prove the legal conclusions that flow from the admitted factual allegations. In re: Donnan, 01-3058 (La.1/10/03), 838 So.2d 715.
The record in this deemed admitted matter supports a finding that respondent neglected legal matters, failed to communicate with clients, failed to return unearned fees, failed to pay third-party medical providers, shared legal fees with a non-lawyer, engaged in criminal conduct, and failed to cooperate with the ODC in its investigations. Based on these facts, respondent has violated the Rules of Professional Conduct as charged by the ODC.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana *394 State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to-be imposed depends upon the. facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent knowingly and intentionally violated duties owed to his clients, the public, the legal system, and the legal profession, causing ' serious injury to his clients and third parties. The baseline sanction for this type of misconduct is disbarment. The record supports the aggravating and mitigating factors found by the disciplinary board.
We find that permanent disbarment is warranted under Guideline 1 (repeated or multiple instances of intentional conversion of client funds with substantial harm) of the permanent disbarment guidelines. Respondent received settlement funds on behalf of his clients and either failed to remit the funds to the clients and/or failed to pay third parties. Respondent was paid to perform legal work which he either never completed, or at times, never started. Respondent did not refund , the fees paid by clients whose legal matters he did not complete, thereby converting the fees to his own use. Respondent’s conduct with regard to one of his clients even resulted in a criminal conviction for forgery and theft. Therefore, in order to protect the public, respondent must be permanently disbarred.
Accordingly, we will adopt the disciplinary board’s recommendation and permanently disbar respondent. We will also order respondent to make restitution to his clients and the third parties subject of the formal charges.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Kerry Dion Brown, Louisiana Bar Roll number 27189, be. and he hereby is disbarred. His 114name shall be stricken from the roll of attorneys and his license to practice law in the State of Louisiana shall be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. It is further ordered that respondent make restitution to his victims. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. Respondent still owes Premier the following amounts for medical services rendered to his clients: $7,435 for Ronald Firmin, $2,600 for Deshanda Firmin, $16,231 for Delilah Firmin, $2,719 for Barry Young, $1,382 for Darren Alexis, $2,756 for Andre Lennix, and $13,589 for Evangeline Johnson.

. Respondent still owes OSM the following amounts for medical services rendered to his clients: $2,860 for Jerry Hubbard, $2,860 for Delilah Firmin, $1,430 for Ronald Firmin, and $1,430 for Jeanne Johnson.

. Respondent still owes DMA the following amounts for medical services rendered to his clients: $13,670 for Cynthia Brasseaux, $1,758.75 for Theresa Sanders, $6,640.83 for Ronald Firmin, and $2,400 for Evangeline Johnson.

. The ODC indicated that Count VII does not exist because the counts in the formal charges were numbered incorrectly.