ATTORNEY DISCIPLINARY PROCEEDING
PER CURIAM
_JjThis disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, June A, Placer, an attorney licensed to practice law in Louisiana but currently on interim suspension based upon her conviction of a serious crime. In re: Placer, 15-0463 (La. 3/25/15), 164 So.3d 169.
UNDERLYING FACTS AND PROCEDURAL HISTORY
The ODC filed two sets of formal charges against respondent under disciplinary board docket numbers 14-DB-010 and 15-DB-009. Respondent answered the first set of formal charges, and the matter proceeded to a formal hearing. Respondent did not answer the second set of formal charges, and the factual allegations contained therein were deemed admitted. In September 2015, the matters were consolidated by order of the disciplinary board. The disciplinary board then filed in this court a single recommendation of discipline encompassing both sets of formal charges.
14-DB-010

The Divorce Matter

By way of background, respondent and David Molaison were married and had one child together. In May 2011, David filed a petition for divorce. ^Subsequent to the filing of the petition, but prior to the entry of a judgment of divorce, respondent entered into a sexual relationship with Bryan Pfleeger. In response to David’s discovery requests, respondent admitted to her adulterous relationship. Respondent provided copies of e-mails between her and Mr. Pfleeger, and a greeting card purportedly from Mr. Pfleeger as documentary proof of the relationship. Respondent signed a sworn affidavit attesting to the truthfulness of her responses to the discovery requests.
In July 2011, David filed a supplemental petition for divorce based on respondent’s adultery. The e-mails and greeting card were presented to the court as support for obtaining a divorce based on adultery.
The matter went to trial in August 2011. Respondent testified under oath that she committed adultery with Mr. Pfleeger. She also testified to the authenticity of both her e-mails to and from Mr. Pfleeger and to the greeting card she allegedly received from Mr. Pfleeger, Ml documents were admitted into evidence and the divorce was granted based on adultery.
The ODC has since confirmed respondent’s post-filing adultery with Mr. Pfleeger, and has authenticated the emails between respondent and Mr. Pfleeger regarding same. However, the greeting card that respondent attributed to Mr. Pfleeger and that she submitted to the opposing party and to counsel during discovery was found to be fabricated by respondent without Mr. Pfleeger’s knowledge or consent. Respondent allowed this *788 false evidence to be submitted to the court during the underlying proceedings.
In September 2011, respondent e-mailed David and claimed her testimony regarding adultery with Mr. Pfleeger was false. Respondent confirmed to David that the greeting card attributed to Mr. Pfleeger was also false. In November 2011, David informed his lawyer, Barbara Ziv, of respondent’s claim of false testimony and of the fake greeting card.
| sIn December 2011, Ms. Ziv informed Mr. Pfleeger of respondent’s recent statements to David. Mr. Pfleeger confirmed his adulterous relationship with respondent and confirmed the authenticity of his e-mails to and from respondent; however, Mr. Pfleeger denied any involvement with the greeting card in question. Ms. Ziv then informed Mr. Pfleeger that, under the circumstances, she was obligated to file a disciplinary complaint against respondent.
During this time, respondent and David were litigating custody issues. Mr. Pfleeger informed respondent that Ms. Ziv planned to file a disciplinary complaint against her. In response, respondent instructed Mr. Pfleeger to inform Ms. Ziv that she would concede custody of the minor child to David if Ms. Ziv refrained from filing the complaint. Mr. Pfleeger, who is an attorney, was not representing respondent in the domestic litigation and was hesitant to relay this message to Ms. Ziv, but ultimately did so at respondent’s request. Ms. Ziv rejected this “offer” and filed the complaint against respondent.
In March 2012, respondent responded to the complaint filed against her by Ms. Ziv. In doing so, respondent made the following statements to the ODC:
Ms. Ziv tailored her discovery in order that a quick adultery divorce might be obtained. In these responses, I falsely claimed to have had an affair with a friend of long duration. A card was created as corroborating evidence in order to obtain the divorce quickly. This was a mistake that I do regret ...
The ODC alleged respondent’s misconduct violated the following provisions of the Rules of Professional Conduct: Rules 3.3(a)(1) (a lawyer shall not knowingly make a false statement of fact or law to a tribunal), 3.3(a)(3) (a lawyer shall not offer evidence that the lawyer knows to be false), 3.4(b) (a lawyer shall not falsify evidence), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).
| ¿The Shoplifting Matter
In June 2005 in Honolulu, Hawaii, respondent shoplifted merchandise from Macy’s valued in excess of $300. Respondent was charged with second degree theft, pleaded no contest to the charge, and moved to defer acceptance of the plea. In September 2008, an order was signed granting respondent’s motion. During the five-year period of deferral, respondent was placed on supervised probation with specific conditions, which she completed.
The ODC alleged respondent’s misconduct violated Rule 8.4(b) (commission of a criminal act reflecting adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer) of the Hawaii Rules of Professional Conduct.[1]
*789 In response to the formal charges in 14-DB-010, respondent admitted her misconduct and explained the context in which her actions occurred. Beginning in 2005, she suffered from severe depression, for which she sought treatment with a psychiatrist. During this time, she lost a sister to suicide, another sister suffered a drug overdose, and her parents suffered from serious medical problems, including brain disease and cancer. Thereafter, her husband filed for divorce, which turned bitter, and a contentious child custody battle ensued. Respondent’s concern over the emotional health of her son caused her much stress and anxiety. She continued treatment for her own mental health and was prescribed several anti-depressants, which, in her opinion, adversely affected her judgment and decision-making ability.
| ^Following the filing of respondent’s answer, this matter proceeded to a hearing before the hearing committee in March 2015. Respondent failed to appear at the hearing and was not represented.
15-DB-009

The DWI Matter

In December 2012, respondent was involved in an automobile accident. When the police arrived, respondent was found to be under the influence of alcohol, and she was arrested for multiple traffic violations, including driving while intoxicated.
The ODC alleged respondent’s misconduct violated Rule 8.4(b) (commission of a criminal act reflecting adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer) of the Rules of Professional Conduct.

The CDS Matter

In March 2018, respondent was stopped by police in Tangipahoa Parish after she was observed driving in an erratic fashion. A clear plastic bag with seven rocks of crack cocaine was found in her possession. Respondent was arrested for careless operation of a motor vehicle as well as possession of a Schedule II narcotic. Upon presentation the District Attorney of Tan-gipahoa Parish charged respondent with a violation of La. R.S. 40:967(C)(2), possession of a Schedule II controlled dangerous substance, to wit: cocaine. On November 12, 2013, respondent pleaded guilty to the drug charge and was sentenced to serve three years in the custody of the Department of Corrections. The jail term was deferred and respondent was placed on supervised probation through the Probation and Parole Board. On August 7, 2014, respondent failed to appear for felony | ^monitoring, resulting in the issuance of a bench warrant for her arrest and a hold without bond. To date, respondent remains a fugitive.
The ODC alleged respondent’s misconduct violated Rule 8.4(b) of the Rules of Professional Conduct.
As previously noted, respondent failed to answer the formal charges in 15-DB-009. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee *790 ■written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee’s consideration.

Hearing Committee Report

After considering the evidence presented at the hearing in 14-DB-010, the hearing committee found that respondent admitted to the substantive factual allegations of the formal charges. After considering the ODC’s submission in 15-DB-009, the hearing committee determined the factual allegations of the formal charges were deemed admitted and proven by clear and convincing evidence. The committee also determined respondent violated the Rules of Professional Conduct as alleged in both sets of formal charges.
The committee then determined that respondent violated duties owed to the public and the legal system. Her conduct was both knowing and intentional. Respondent engaged in multiple criminal activities, including felony activities. In addition, and importantly, she engaged in acts of misconduct involving a knowing act of dishonesty and fraud within a pending domestic matter. This conduct spans over a period of a decade and suggests that her activity is not an isolated or remote event. Her behavior reflects adversely on her character and fitness to practice law |7in Louisiana. Respondent also chose to ignore and not participate in this disciplinary proceeding. Based on the ABA’s Standards for Imposing Lawyer Sanctions, the committee determined that the applicable baseline sanction ranges from suspension to disbarment.
In aggravation, the committee found a prior disciplinary record, a dishonest or selfish motive, a pattern of misconduct, multiple offenses, and “failure to participate in the disciplinary process.” Other than those contained in her answer to the formal charges in 14-DB-010, the committee found no mitigating factors are present.
The committee struggled with determining an appropriate sanction, finding disbarment or permanent disbarment to be the only two appropriate choices available. After considering all the aforementioned factors and collective misconduct, as well as the recommendation of the ODC, the committee recommended respondent be disbarred.
Neither respondent nor the ODC filed an objection to the hearing committee’s report and recommendation.

Disciplinary Board Recommendation

After reviewing these consolidated matters, the disciplinary board determined that the committee’s findings with regard to 14-DB-010 are supported by the evidence submitted by the ODC, and that with regard to 15-DB-009, the factual allegations of the formal charges are deemed admitted and proven by clear and convincing evidence. The board also determined that the legal conclusions of the hearing committee are supported by the factual allegations asserted in the formal charges and/or by the evidence submitted in support of the allegations. The board further determined that the committee correctly applied the Rules of Professional Conduct.
|sThe board then determined that respondent knowingly and intentionally violated duties owed to the public and the legal system. Her falsification of evidence caused actual harm to her divorce proceeding. Her criminal conduct had the potential to cause significant harm (driving while intoxicated) and caused actual harm (shoplifting). After considering the ABA’s Standards for Imposing Lawyer Sanctions, the board determined that the baseline sanction is disbarment.
In aggravation, the board found a dishonest or selfish motive, a pattern of mis *791 conduct, multiple offenses, substantial experience in the practice of law (admitted 1997), and illegal conduct. In mitigation, the board found the absence of a prior disciplinary record.
After also considering this court’s prior jurisprudence addressing similar misconduct, the board recommended that respondent be disbarred. The board further recommended that respondent be assessed with the costs and expenses of this proceeding.
Neither respondent nor the ODC filed an objection to the disciplinary board’s report and recommendation,
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La. 10/2/09), 18 So.3d 57.
In cases in which the lawyer does not answer the formal charges, the factual allegations of those charges are deemed admitted. Supreme Court Rule XIX, § 11(E)(3). Thus, the ODC bears no additional burden to prove the factual allegations contained in the formal charges after those charges have been deemed 13admitted. However, the language of § 11(E)(3) does not encompass legal conclusions that flow from the factual allegations. If the legal conclusion the ODC seeks to prove (i.e., a violation of a specific rule) is not readily apparent from the deemed admitted facts, additional evidence may need to be submitted in order to prove the legal conclusions that flow from the admitted factual allegations. In re: Donnan, 01-3058 (La. 1/10/03), 838 So.2d 715.
The evidence in the record supports a finding that respondent presented fabricated evidence to a tribunal in her own divorce proceeding, shoplifted merchandise valued in excess of $300, was arrested for multiple traffic violations including DWI, and was charged with possession of cocaine. This conduct amounts to a violation of the Rules of Professional Conduct as charged in both sets of formal charges.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La. 1984).
The record also supports a finding that respondent knowingly and intentionally violated duties owed to the public and the legal system, causing potential and actual harm. The aggravating and mitigating factors found by the disciplinary board are supported by the record.
ImStanding alone, the misconduct involving respondent’s intentional misrepresentation of facts to a court warrants a baseline sanction of disbarment under Standard 6.11 of the ABA’s Standards for Imposing Laivyer Sanctions:
Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and *792 causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding.
Respondent admitted to presenting fabricated evidence to a tribunal in her divorce proceeding to bolster her case for a more expeditious divorce. With full knowledge that the evidence was false, she introduced the evidence to the court. ■
As to the remaining misconduct, which is criminal in nature and rooted in substance abuse, we note that in In re: Baer, 09-1795 (La. 11/20/09), 21 So.3d 941, we suspended an attorney from the practice of law for one year and one day for driving while intoxicated on two occasions. In discussing an appropriate sanction, we noted that actual suspensions are imposed in cases in which the DWI stems from an unresolved substance abuse problem.
Although respondent does not have multiple DWI offenses, her DWI offense and drug conviction strongly suggest the existence of a substance abuse problem. Since respondent allowed the formal charges to be deemed admitted, we have no way of knowing whether she has since sought treatment for this problem. Had this misconduct occurred in isolation, a period of actual suspension might have been appropriate. When considered in conjunction with the additional misconduct, however, disbarment is warranted.
Considering the totality of the misconduct in light of the aforementioned jui-is-prudence, we will adopt the board’s recommendation and disbar respondent,
InDECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that June A. Placer, Louisiana Bar Roll number 24858, be and she hereby is disbarred, retroactive to March 25, 2015, the date of her interim suspension. Her name shall be stricken from the roll of attorneys and her license to practice law in the State of Louisiana shall be revoked. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
CLARK, J., dissents and assigns reasons.
CRICHTON, J., additionally concurs and assigns reasons.

. Rule 8.5(a) of the Louisiana Rules of Professional Conduct provides that a lawyer admitted to practice in Louisiana "is subject to the disciplinary authority of this jurisdiction, regardless of where the lawyer’s conduct occurs.” As to the choice of which jurisdiction’s rules of professional conduct are to be applied in such circumstances, Rule 8.5(b)(2) states that the rules of the jurisdiction in which the lawyer’s conduct occurred shall apply "[i]n *789 any exercise of the disciplinary authority of this jurisdiction.”
In this case, respondent is admitted to practice in Louisiana, while her misconduct occurred in Hawaii. Therefore, respondent is subject to the disciplinary authority of this court, but the Hawaii Rules of Professional Conduct apply. In any event, the distinction is largely academic, as the Hawaii rules in question are substantially identical to the Louisiana rules.